
FILED
MAR 01 2017
CLERK

UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
WESTERN DIVISION

| | | |
|---|---|---|
| HAROLD HOLLOW HORN, | ) | CIV: 17-5016 |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | COMPLAINT |
| | ) | |
| FIRSTCOMP INSURANCE COMPANY; | ) | |
| | ) | |
| Defendant. | ) | |

Comes now the Plaintiff, Harold Hollow Horn, by and through his attorneys of record, and for his Complaint and cause of action against the above-named Defendant, states and alleges as follows:

**INTRODUCTION**

1. Harold Hollow Horn was a bus driver who incurred multiple injuries during the course of his years of work for his employer, Porcupine Contract School. After Mr. Hollow Horn suffered a work injury in 2011, he was no longer physically able to perform his job duties and lost his employment. The workers' compensation insurer, Defendant First Comp Insurance Company, failed to provide wage replacement benefits. Instead, it engaged in a five year long campaign of denial and delay, to deprive Hollow Horn of his benefits or significantly reduce its obligations to him. Defendant First Comp Insurance Company engaged in a hostile and malicious investigation of Hollow Horn's

1

claim, handing, negotiations, and legal proceedings, including presenting contradictory evidence and arguments, legally insufficient expert witnesses, forcing the matter to administrative hearing, frivolous appeal, and otherwise obstructing the workers' compensation process. During the five-years of unwarranted delay and denial, Hollow Horn suffered financial and emotional hardship which is not remedied simply by First Comp Insurance Company's payment of the benefits it knowingly owed all along.

## PARTIES

2. Plaintiff Harold Hollow Horn ("Hollow Horn") is a resident of Porcupine, South Dakota. *See* Attachment 1 (*Hollow Horn v. Porcupine Contract School and First Comp Insurance Co.*, HF # 172, 2011/12, South Dakota Department of Labor, Findings of Fact and Conclusions of Law, dated November 4, 2015), Finding of Fact ¶2.

3. Defendant FirstComp Insurance Company ("FirstComp") is domiciled in the State of Nebraska, and doing workers' compensation insurance business in the State of South Dakota.

4. The circumstances which are the subject matter of this Complaint occurred in the State of South Dakota, and the amount in controversy exceeds $75,000, exclusive of costs and interest.

5. Jurisdiction is proper based upon diversity of citizenship pursuant to 28 U.S.C.§ 1332.

6. At all times material herein, Hollow Horn was employed by Porcupine Contract School ("Employer"). *See* Attachment 1, Findings of Fact, ¶¶ 5, 6.

7. At all times material herein, FirstComp was the workers' compensation insurer for Employer.

8. At all times material herein, FirstComp had a duty under South Dakota law to ensure and provide workers' compensation benefits to injured employees and to ensure these benefits are timely provided. *See generally* Attachment 1; SDCL § 62-4-1.

## FACTS

9. Hollow Horn began his career of bus driving in 1988. He was hired permanently as a full-time bus driver in 1992, with Employer. *See* Attachment 1, Finding of Fact, ¶5.

10. Hollow Horn has driven bus for the Porcupine Contract School since that time, except for a three-year period from 1999 to 2001. *See id.*, Finding of Fact, ¶6.

11. In 2008, Hollow Horn was injured in the course and scope of his employment with Employer. *See id.*, Finding of Fact, ¶1.c.

12. On April 21, 2008, Hollow Horn slipped on the bus steps while exiting and hurt his lower back. *See id.*, Finding of Fact, ¶9.

13. One month earlier, in March 2008, Hollow Horn was helping to move a large air compressor and injured his back at work. *See id.*, Finding of Fact, ¶8.

14. Dr. deGrange determined that Hollow Horn suffered an 8% whole person impairment resulting from the 2008 work injuries to Hollow Horn's lower back. *See* Attachment 1, *id.*, ¶¶1.c, 12.

15. Dr. deGrange attributed 50% of Hollow Horn's disability to his industrial (work) injuries. *See id.*, Finding of Fact, ¶1.f.

3

16. Both of Hollow Horn's 2008 injuries were considered by Dr. deGrange and Employer and Insurer accepted these as compensable, resulting in a payment of permanent partial disability (8% whole person impairment) on March 1, 2009. *See id.*, Finding of Fact, ¶12.

17. Hollow Horn returned to work following the 2008 injuries. *See id.*, Finding of Fact, ¶1.e.

18. In the fall of 2009, Hollow Horn was assigned to the larger bus route in town and was told not to lift anything. *See id.*, Finding of Fact, ¶13.

19. Hollow Horn's supervisor was adamant that Hollow Horn not do anything that may reinjure his back. *Id.*

20. Employer made accommodations for Hollow Horn after his return to work in 2009. *Id.*

21. In May 2011, Hollow Horn was driving his normal route through town when he twisted to look over his left shoulder and drove over a pot hole at the same time; the pot hole rocked the bus to the right. *See id.*, Finding of Fact, ¶14.

22. This combination of movement jarred Hollow Horn's lower back and he believed he had reinjured his back. *See id.*, Finding of Fact, ¶14.

23. Hollow Horn reported the injury to his supervisor after finishing his bus route. *See id.*, Finding of Fact, ¶15.

24. Hollow Horn treated with Dr. Rand Schleusener, with Black Hills Orthopedic. *See id.*, Finding of Fact, ¶16.

25. Black Hills Orthopedic is the same medical group Hollow Horn sought treatment with after his 2008 injury. The same doctor was not available, so Hollow Horn was assigned to Dr. Schleusener. *Id.*

26. Dr. Schleusener gave the opinion that the 2011 injury was an aggravation of the 2008 injury, and that the MRI's were essentially similar. *See id.*, Finding of Fact, ¶17.

27. Dr. Schleusener gave Hollow Horn working restrictions of no bending or twisting, and no lifting over 25 pounds. *See id.*

28. On August 30, 2011, Dr. Schleusener released Hollow Horn to drive bus with the limitation of no lifting over 25 pounds. *See id.*, Finding of Fact, ¶18.

29. For the 2011/12 school year, starting in September 2011, Hollow Horn returned to work as a bus driver. *See id.*, Finding of Fact, ¶19.

30. Hollow Horn's job duties had changed and he was expected to perform custodial duties in the school, such as supervising the students, cleaning, sweeping and mopping floors, hauling trash, and performing other duties as assigned. *See id.*

31. Hollow Horn was expected to work an 8-hour day. *See id.*

32. Hollow Horn told Dr. Schleusener what Employer now expected of him at work. Dr. Schleusener advised Hollow Horn to give it a try and see if he could perform the work. *See id.*, Finding of Fact, ¶20.

33. Hollow Horn made an effort for about a week and was unable to work the 8-hour day expected of him without being in extreme pain. *See id.*, Finding of Fact, ¶21.

34. Dr. Schleusener changed Hollow Horn's work restrictions to reflect Hollow Horn's capabilities, and past performance levels, of working two hours in the am and two hours in the pm. *See id.*, Finding of Fact, ¶22.

35. Employer could not accommodate the restrictions given to Hollow Horn and asked Hollow Horn to resign his position of bus driver, which he did in mid-September 2011. *See id.*, Finding of Fact, ¶23.

36. Dr. Schleusener recommends that Hollow Horn remain on work and lifting restrictions and only resume activities as tolerated. *See id.*, Finding of Fact, ¶24.

37. On September 30, 2011, First Comp denied Hollow Horn's claims for further medical or indemnity (wage replacement) benefits.

38. On April 3, 2012, Hollow Horn asked Dr. Schleusener to give him a disability rating, and work restrictions, and detail what work Hollow Horn is capable of performing. *See id.*, Finding of Fact, ¶25.

39. Dr. Schleusener, in response to Hollow Horn's request, on April 3, 2012, informed Hollow Horn via letter that Hollow Horn was unable to drive bus. *See id.*, Finding of Fact, ¶26.

40. On June 11, 2012, Hollow Horn filed a Petition with the South Dakota Department of Labor ("Department of Labor" or "DOL") to obtain workers' compensation benefits for his work injury.

41. On April 25, 2013, Hollow Horn underwent a medical examination by Dr. Nolan Segal at First Comp's request. *See id.*, Finding of Fact, ¶25.

42. Dr. Segal's opinion was that Hollow Horn's work had nothing to do with Hollow Horn's back condition; but that Hollow Horn's back condition is the result of degenerative and hypertrophic disc disease and Scheuermann juvenile disc disease. *See id.*, Finding of Fact, ¶32.

43. Dr. Segal's opinion was that any work injuries had, "at most, been temporary aggravations of his preexisting degenerative condition." *See id.*

44. The MRI taken after the 2011 injury was generally the same as the MRI taken after the 2008 injury; Hollow Horn was found to have "mild left lumbar scoliosis with multilevel degenerative disc disease and disc displacement." *See id.*, Finding of Fact, ¶33.

45. The doctors testified that there was not significant degeneration between the two incident dates. *See id.*, Finding of Fact, ¶34.

46. Hollow Horn has obvious degeneration in his back, but the degeneration did not worsen between 2008 and 2011. *See id.*, Finding of Fact, ¶35.

47. Dr. Segal gave the opinion that Hollow Horn's back condition and need for treatment has *never* been work related and is directly caused by Hollow Horn's degenerative disc disease. *See id.*, Finding of Fact, ¶39.

48. Dr. Segal's causation opinion was that none of Hollow Horn's disability relates to any work injury. *See id.*, Finding of Fact, ¶40.

49. Dr. Segal's opinion was contradicted by the stipulated fact that the injury of 2008 is compensable as an 8% whole person permanent partial disability.

50. The basis for Dr. Segal's entire opinion, that none of Hollow Horn's disability relates to *any* work injury, goes against the parties' stipulation. *See* Attachment 2 (Letter Decision, Circuit Court of South Dakota – Sixth Judicial Circuit, dated June 15, 2016), p. 12.

51. Dr. Segal's opinions were obviously unreliable and unreasonable because they rejected and contradicted the known medical history, records of the case, and the past decision by First Comp to accept the 2008 work injuries a compensable and resulting in permanent disability.

52. First Comp knew that Dr. Segal's opinion did not provide a reasonable basis for denying the claim.

53. First Comp knew that Dr. Segal's opinion did not provide a reasonable basis for defending the claim before the Department of Labor.

54. First Comp admitted that it was barred from arguing Dr. Segal's causation opinion, yet persisted with this argument to the South Dakota Department of Labor and the Sixth Judicial Circuit on appeal. *See* Attachment 1, Conclusion of Law, ¶6.

55. The Department of Labor found that Dr. Segal's opinions were not persuasive because they were not based on the admitted facts of the case. *See id.*, Finding of Fact, ¶41.

56. Dr. Segal's causation opinion was barred as a matter of law by the Department of Labor and rejected, because they sought to argue a "better set of facts" than those Insurer had stipulated to. *See id.*, Conclusion of Law, ¶5.

57. Dr. Segal's opinion relied, in part, on a medical record review of Dr. Richard Farnham.

58. The record review and opinions of Dr. Richard Farnham, obtained by Insurer, were unreasonable for the same reasons as Dr. Segal's opinions and report.

59. Like Dr. Segal's opinion, Dr. Farnham's opinions were obviously unreliable and unreasonable because they rejected and contradicted the known medical history, records of the case, and the past decision by First Comp to accept the 2008 work injuries a compensable and resulting in permanent disability.

60. First Comp knew that Dr. Farnham's opinion did not provide a reasonable basis for denying the claim.

61. First Comp also asserted that Hollow Horn was able to work in his previous employment as a bus driver. *See id.*, Finding of Fact, ¶46.

62. During Hollow Horn's last few months with Employer, after the May 2011 accident, Employer changed the work expectations of someone in Hollow Horn's position. *See id.*, Finding of Fact, ¶48.

63. For the 2011/12 school year, Employer expected Hollow Horn to drive bus in the morning and afternoon, but also perform duties such as janitorial duties and supervisory duties during the school day. *See id.*

64. Hollow Horn was not able to perform these duties as they were outside the work restrictions given to him by Dr. Schleusener. *See id.*, Finding of Fact, ¶49.

65. Hollow Horn told Dr. Schleusener what the Employer expected of him and Dr. Schleusener tightened the restrictions and put them in writing for Employer. *See id.*

66. As Hollow Horn was unable to perform the tasks of the job without a great amount of accommodation, Employer did not retain Hollow Horn in the position. *See id.*, Finding of Fact, ¶50.

67. Dr. Segal agreed that heavy lifting while at work, such as a 500-pound air-compressor or even a 45-pound mop bucket, may exacerbate Hollow Horn's condition. *See id.*, Finding of Fact, ¶52.

68. Dr. Segal also gave an opinion on the type of work Hollow Horn could expect to perform, given his current back condition. He felt that a 25 pound lifting restriction was appropriate as was the recommendation to not engage in repetitive bending, twisting, lifting, crawling, or any high impact type exercise or work. *See id.*, Finding of Fact, ¶53.

69. The work activities assigned to Hollow Horn in the beginning of the 2011/12 school year were beyond the physical activity recommendation of both Dr. Schleusener and Dr. Segal. *See id.*, Finding of Fact, ¶54.

70. First Comp's assertion that Hollow Horn was able to work in his previous employment as a bus driver was not supported by the testimony of their medical expert. *See id.*, Finding of Fact, ¶55.

71. The Department of Labor rejected First Comp's assertion that Hollow Horn was able to work in his previous employment as a bus driver. *See id.*

72. There was no work in Hollow Horn's geographical area that would meet the restrictions and that would allow Hollow Horn to earn 85% of his pre-injury earning capacity, or his work comp benefit rate. *See id.*, Finding of Fact, ¶57.

73. First Comp relied on the vocational opinions of Mr. Thomas Karrow in resisting Hollow Horn's claims for workers' compensation benefits. *See id.*, Finding of Fact, ¶60.

74. Mr. Karrow did not accept or apply the limitations as described by Dr. Schleusener in forming his vocational opinions. *See id.*, Finding of Fact, ¶62.

75. Mr. Karrow only identified one specific job available for Hollow Horn in his community, as a bus driver. *See id.*, Finding of Fact, ¶63.

76. When speaking with the potential employer, Mr. Karrow did not discuss the limitations imposed by Dr. Schleusener, nor did he discuss Dr. Segal's additional limitations, such as not driving on rural or pot holed roads, discussed at Dr. Segal's deposition. *See id.*, Finding of Fact, ¶64.

77. Mr. Karrow opined that it would not make sense for him to discuss Dr. Schleusener's limitations with the potential employer, because those limitations precluded Hollow Horn from the identified job. *See id.*, Finding of Fact, ¶65.

78. Mr. Karrow's opinion focused on Hollow Horn's capabilities to the exclusion of his limitations. *See id.*, Finding of Fact, ¶66.

79. Mr. Karrow did not inform prospective employers of the nature of all of Hollow Horn's limitations. *See id.*

80. First Comp knew that Mr. Karrow's vocational opinions had been rejected by the South Dakota Department of Labor and Courts in prior cases, because Mr. Karrow had focused on an injured worker's capabilities to the exclusion of his or her limitations. *See id.*, Conclusion of Law, ¶7.

81. Mr. Karrow's opinions regarding work availability and retraining were rejected by the Department of Labor because he did not explain all of the Hollow Horn's limitations to potential employers. *See id.*, Conclusion of Law, ¶7.

82. Mr. Karrow's opinion, which focused on Hollow Horn's capabilities to the exclusion of his limitations, was found by the Department of Labor to be insufficient as a matter of law. *See id.*, Conclusion of Law, ¶8.

83. The Department of Labor determined that First Comp failed to meet its burden of production that some form of suitable work was regularly and continuously available to Hollow Horn. *See id.*, Conclusion of Law, ¶10.

84. Mr. Karrow's opinion was obviously unreliable and unreasonable because it rejected the medical limitations of both Dr. Schleusener and Dr. Segal, as described in his deposition.

85. First Comp knew that Mr. Karrow's opinion was not reliable or reasonable, because it knew Mr. Karrow's opinion was not based on the medical limitations, including those of their medical expert, Dr. Segal.

86. First Comp knowingly presented and argued the unreliable and unreasonable opinion of Mr. Karrow to the South Dakota Department of Labor and Sixth Judicial Circuit Court.

87. On September 19, 2014 the Department of Labor held a hearing on these matters. *See id.*, page 1.

88. On September 4, 2015, the Department of Labor entered its Decision on this matter,

finding entirely in favor of Hollow Horn and rejecting First Comp's expert witnesses.

89. An Order and Findings of Fact and Conclusions of Law were entered by the Department of Labor on November 4, 2015. *See* Attachment 1.

90. The Department of Labor found Hollow Horn to be a credible witness. *See* Attachment 1, Finding of Fact, ¶70.

91. First Comp appealed from the Department of Labor to the Sixth Judicial Circuit. *See* Attachment 2.

92. First Comp alleged on appeal that Hollow Horn should not be found a credible witness regarding the pot hole injury incident.

93. First Comp argued that Hollow Horn was not in pain sufficient to warrant workers' compensation benefits, despite Dr. Segal's testimony that Hollow Horn is suffering pain and has work restrictions.

94. First Comp presented no evidence or argument that Hollow Horn's description of the pot hole injury was inaccurate.

95. First Comp had no basis to attack Hollow Horn's credibility and character.

96. After Hollow Horn noted that First Comp had provided no evidence to support their attack on Hollow Horn's credibility regarding the pot hole injury, First Comp withdrew its claims on the issue of the occurrence of the pot hole injury.

97. First Comp's argument contradicted its own medical expert's testimony that the pot hole injury had occurred and would cause an "impact load" to Hollow Horn's spine.

98. First Comp's attack on Hollow Horn's credibility and character was an attempt to persuade the Sixth Judicial Circuit through improper and unwarranted means.

99. First Comp argued on appeal that Dr. Segal and Mr. Karrow's opinions should not have

been rejected.

100. First Comp knew that the bases of its denials were unreliable, unreasonable, unsupportable, and contradicted by the medical records, yet it kept asserting these arguments.

101. The Sixth Judicial Circuit Court affirmed the Department of Labor's rulings on June 15, 2016. *See* Attachment 2.

102. First Comp denial of Hollow Horn's 2011 claim was unwarranted and unreasonable, because the denial was based on opinions rejecting the accepted compensability of the 2008 injuries and resulting permanent disability.

103. First Comp did not disclose to either Dr. Farnham or Dr. Segal that it had previously accepted the 2008 injuries as work related, compensable, and resulting in permanent partial disability.

104. First Comp did not disclose this information in order to obtain expert opinions which had no basis in the known facts of the case.

105. First Comp knew the unsupported expert opinions were insufficient, unreliable, and unreasonable to deny Hollow Horn's claim.

106. First Comp presented frivolous arguments to the Department of Labor and on appeal to the Sixth Judicial Circuit Court based on the faulty expert opinions.

107. First Comp recklessly disregarded the facts and evidence before them in order to assert denials and cause further delay in Hollow Horn's receipt of workers' compensation benefits.

108. First Comp knew that Hollow Horn was unemployable and was no longer earning an income.

109. First Comp knew that Hollow Horn's inability to find work would cause financial and emotional stress to him and his family.

110. First Comp knew that the longer they refused to pay workers' compensation benefits, the greater the damage and suffering to Hollow Horn, financially and emotionally.

111. First Comp planned to use their denial of benefits to force Hollow Horn to accept a settlement far less than First Comp knew they owed him.

112. First Comp knew its settlement offers were significantly below the value of Hollow Horn's claim for benefits.

113. On August 12, 2013, and again on November 4, 2013, First Comp offered to settle Hollow Horn's claim for $2,000 (Two thousand dollars).

114. The Department of Labor determined that the present value of Hollow Horn's future wage replacement benefits, as of October 1, 2015, was $360,485.24 (Three hundred sixty thousand, four hundred eighty-five dollars and twenty-four cents).

115. On August 4, 2016, First Comp paid past due workers' compensation benefits in the amount of $139,720.82 (One hundred thirty-nine thousand, seven hundred twenty dollars and eighty-two cents), for payments due to July 6, 2016, including interest.

116. Hollow Horn incurred and paid attorney fees in the amount of $163,966.95 (One hundred sixty-three thousand, nine hundred sixty-six dollars and ninety-five cents) ($144,770.03 attorneys' fees; $10,510.72 in costs and expenses; $8,686.20 in taxes).

117. As a result of the attorneys' fees and costs, Hollow Horn's future weekly benefit rate was reduced from $442.99 to $286.48 per week.

118. First Comp was ordered to pay Hollow Horn $286.48 per week, plus cost of living

adjustments, for the remainder of his life, to replace his lost wages.

119. As a pattern and practice, First Comp denies benefits to injured workers in order to force them to accept settlements for far less than First Comp knows the injured workers are owed.

## COUNT I – BAD FAITH

120. Plaintiff realleges paragraphs 1 through 118 above, inclusive, and they are specifically incorporated by reference, as if set out in full herein.

121. First Comp recklessly disregarded the known facts and the proofs submitted to it when it obtained and relied on the opinions of Dr. Farnham in denying Hollow Horn's claim.

122. First Comp recklessly disregarded the known facts and the proof submitted to it when it obtained and relied on the opinions of Dr. Segal in defending and appealing Hollow Horn's claim before the Department of Labor and the South Dakota Sixth Judicial Circuit.

123. First Comp unreasonably denied and delayed providing worker's compensation benefits to Hollow Horn, as required by law and contract.

124. First Comp knew or should have known that it had no reasonable basis to deny Hollow Horn's worker's compensation benefits.

125. First Comp failed to perform a reasonable and good faith investigation before denying or unreasonably delaying Hollow Horn's workers' compensation benefits.

126. First Comp engaged in bad faith and unfair dealing when handling and negotiating Hollow Horn's workers' compensation claim.

127. First Comp knew that there was no reasonable basis to deny Hollow Horn's

workers' compensation benefits, or was recklessly indifferent to, or recklessly disregarded, the facts and proofs submitted or known to it when it withheld, denied, or delayed such workers' compensation benefits.

128. First Comp failed to give equal consideration to the interests of their insured.

129. First Comp has otherwise breached its duty of good faith and fair dealing with the plaintiff.

## COUNT II - BARRATRY

130. Plaintiff realleges paragraphs 1 through 128 above, inclusive, and they are specifically incorporated by reference, as if set out in full herein.

131. First Comp forced Hollow Horn to file legal proceedings to receive workers' compensation benefits. When he did so, First Comp filed documents and asserted defenses which they knew to be false, without merit, that were frivolous, disingenuous, malicious, lacked a reasonable basis in fact, were asserted for purposes of delay or other improper purpose, were filed with malice and in bad faith, or that had no rational argument in evidence or law to support its claims.

## COUNT III – ABUSE OF PROCESS

132. Plaintiff realleges paragraphs 1 through 130 above, inclusive, and they are specifically incorporated by reference, as if set out in full herein.

133. First Comp engaged in abuse of process by using the administrative and appellate processes for an ulterior and improper purpose, to deny Hollow Horn workers' compensation benefits, to obtain a settlement of Hollow Horn's claim for far less than it knew was owed, and to send a message to other injured workers that it will not litigate matters fairly, but will assert contradictory factual positions through hearing and appeal.

134. First Comp did so knowing Dr. Segal's IME, Dr. Farnham's record review, and Mr. Karrow's vocational opinion offered no factual or legal basis to deny the claim.

135. First Comp engaged in an abuse of process by intentionally asserting an inconsistent position from its admissions, in order to force further proceedings.

136. First Comp's use of the legal system here was:

    i. An attempt to reduce its own costs by refusing to provide all worker's compensation benefits.

    ii. An attempt to communicate a message to Hollow Horn and other employees that First Comp will not address workers' compensation claims in good faith, but will require injured workers pursue legal proceedings to receive undisputed benefits.

## COUNT IV – PUNITIVE DAMAGES

137. Plaintiff realleges paragraphs 1 through 135 above, inclusive, and they are specifically incorporated by reference, as if set out in full herein.

138. Defendant acted with malice, oppression, and deliberate and reckless disregard for the rights of Hollow Horn.

139. Defendant acted in accordance with their standard, practices, policies, and procedures in worker's compensation cases, pursuant to a plan to unlawfully minimize claim expenses by denying legitimate claims and withholding benefits until injured workers accept unreasonably low settlement offers.

140. Defendant did so knowing that injured workers rarely have competent legal counsel available to them to defend the injured worker's rights after these rights are determined by the Department of Labor proceedings.

17

141.     Therefore, injured workers, who have already had their right to benefits determined, are at the mercy of Defendant's arbitrary, baseless, and disingenuous denials.

142.     Plaintiff is entitled to an award of punitive damages as the only way to deter workers compensation insurers from continuing to employ the same methods against other injured employees.

**WHEREFORE,** Plaintiff requests an award of compensatory damages, including both economic and non-economic losses, punitive damages, prejudgment interest as allowed by law, attorney's fees and costs, and such other further relief as the court deems just and equitable under the circumstances.

Dated this 1st day of March, 2017.

BY: _____
G. Verne Goodsell
David S. Barari
GOODSELL QUINN, LLP
246 Founders Park Dr., Suite 201
P.O. Box 9249
Rapid City, SD 57709-9249
Tel: (605) 343-3000
Fax: (605) 343-3251

and

Wm. Jason Groves
GROVES LAW OFFICE
4440 West Glen Place
Rapid City, SD 57702
Tel: (605) 484-7604

Attorneys for Plaintiff

TRIAL BY JURY IS HEREBY DEMANDED

_____
David S. Barari