UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

WESTERN DIVISION

| | |
|---|---|
| HAROLD HOLLOW HORN,<br><br>                    Plaintiff,<br><br>      vs.<br><br>FIRSTCOMP INSURANCE COMPANY,<br><br>                    Defendant. | CIV. 17-5016-JLV<br><br>ORDER |

## INTRODUCTION

Defendant FirstComp Insurance Company filed a motion to dismiss plaintiff Harold Hollow Horn's complaint pursuant to Fed. R. Civ. P. 12(c). (Docket 13). Plaintiff opposes defendant's motion. (Docket 19). For the reasons stated below, defendant's motion is denied.

## LEGAL STANDARD

Rule 12(c) provides that "[a]fter the pleadings are closed--but early enough not to delay trial--a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). To analyze the motion to dismiss, plaintiff's factual allegations must be taken as true. Braden v. Wal-Mart Stores, Inc., 588 F.3d 585, 594 (8th Cir. 2009); Ashcroft v. Iqbal, 556 U.S. 662, 678(2009). A court is "not bound to accept as true a legal conclusion couched as a factual allegation." Bell Atlantic Corporation v. Twombly, 550 U.S. 544, 555 (2007).[1] See also Crooks v. Lynch, 557 F.3d 846, 848 (8th Cir. 2009) (the court must

---

[1]Since Twombly and Iqbal are the most significant precedents on this issue, any internal quotations or citations to earlier cases are being omitted throughout the remainder of this decision.

review a "motion to dismiss for failure to state a claim, accepting the facts alleged in the complaint as true and granting all reasonable inferences in favor of [the plaintiff], the nonmoving party."). "Factual allegations must be enough to raise a right to relief above the speculative level . . . ." <u>Twombly</u>, 550 U.S. at 555. "The pleadings must contain something more . . . than . . . a statement of facts that merely creates a suspicion [of] a legally cognizable right of action, on the ASSUMPTION THAT ALL THE allegations in the complaint are true (even if doubtful in fact) . . . ." <u>Id.</u> (emphasis in original). "[A] well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely." <u>Id.</u> at 556.

"[O]nly a complaint that states a plausible claim for relief survives a motion to dismiss." <u>Iqbal</u>, 556 U.S. at 679.

> In keeping with these principles a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide a framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.

<u>Id.</u>

"The plausibility standard requires a plaintiff to show at the pleading stage that success on the merits is more than a 'sheer possibility.' It is not however, a 'probability requirement.' " <u>Braden</u>, 588 F.3d at 594 (citing <u>Iqbal</u>, 556 U.S. at 679) (citing <u>Twombly</u>, 550 U.S. at 570). "A complaint states a plausible claim for relief if its factual content . . . allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." <u>Id.</u> "[T]he complaint should be read as a whole, not

parsed piece by piece to determine whether each allegation, in isolation, is plausible." Id.

> Plausibility . . . does not imply that the district court should decide whose version to believe, or which version is more likely than not. Indeed, the Court expressly distanced itself from the latter approach in Iqbal, "the plausibility standard is not akin to a probability requirement." 129 S. Ct. at 1949 (quotation marks omitted). As we understand it, the Court is saying instead that the plaintiff must give enough details . . . to present a story that holds together. . . . *[C]ould* these things have happened, not *did* they happen.

Swanson v. Citibank, N.A., 614 F.3d 400, 404 (7th Cir. 2010) (emphasis in original). "In assessing a motion [to dismiss] . . . a court should . . . not dismiss [a] complaint 'unless it appears beyond doubt that the [plaintiff] can prove no set of facts in support of [his] claim which would entitle [him] to relief.'" Holloway v. Lockhart, 792 F.2d 760, 761 (8th Cir. 1986) (citing Conley v. Gibson, 355 U.S. 41, 45-46 (1957)).

**ANALYSIS**

Plaintiff filed an 18-page complaint detailing his accusation against the defendant. (Docket 1). The complaint asserts four separate causes of action against the defendant. Those causes of action are: count I, bad faith; count II, barratry; count III, abuse of process; and count IV, punitive damages. (Docket 1 at pp. 15-18). Attached as exhibits to the complaint are the findings of fact and conclusions of law dated November 4, 2015, of an administrative law judge ("ALJ") of the Division of Labor and Management of the South Dakota Department of Labor ("Division of Labor and Management Decision") and the memorandum decision dated June 15, 2016, of Circuit Court Judge Mark

Barnett of the Sixth Judicial Circuit of the State of South Dakota ("Circuit Court Decision"). (Dockets 1-1 and 1-2).

Because the complaint's factual allegations must be taken as true, the court incorporates the facts alleged in the complaint, together with the Division of Labor and Management Decision and the Circuit Court Decision into this order. Iqbal, 556 U.S. at 678; Braden, 588 F.3d at 594. Further recitation of salient facts from the complaint and its attachments will be discussed in this order.

Except for the three-year period of 1999 to 2001, Mr. Hollow Horn was a full-time bus driver for the Porcupine School from 1992 until his resignation in mid-September 2011. (Docket 1 ¶¶ 9, 10 & 35).[2] In 2008, Mr. Hollow Horn suffered a work related back injury. Id. ¶ 12-15. Dr. deGrange of Black Hills Orthopedics in Rapid City, South Dakota, determined Mr. Hollow Horn suffered an 8 percent whole person impairment and attributed 50 percent of his disability to his work injuries. Id. ¶¶ 14-15 & 25. On March 1, 2009, FirstComp Insurance ("FirstComp") stipulated Mr. Hollow Horn's injuries were compensable under the South Dakota workers' compensation statutes and paid him a permanent partial disability benefit based on the 8 percent whole person impairment. Id. ¶ 16.

In May 2011, while driving his school bus, Mr. Hollow Horn experienced a re-injury of his back. Id. ¶ 22. Dr. Rand Schleusener of Black Hills

_____

[2]A significant number of the paragraphs of the complaint refer to the Division of Labor and Management Decision and the Circuit Court Decision. The court adopts those references, but will only cite to the complaint unless otherwise indicated.

Orthopedics became Mr. Hollow Horn's treating physician.  Id. ¶ 24.  A 2011 MRI found the same general condition as indicated in a 2008 MRI, that is, Mr. Hollow Horn had "mild left lumbar scoliosis with multilevel degenerative disc disease and disc displacement."  Id. ¶ 44.  Dr. Schleusener charted the 2011 injury as an aggravation of the 2008 injury.  Id. ¶ 26.  He gave Mr. Hollow Horn work restrictions of no bending or twisting and no lifting over 25 pounds.  Id. ¶ 27.  On August 30, 2011, Mr. Hollow Horn was released by Dr. Schleusener to drive bus again.  Id. ¶ 28.

During the 2011-12 school year, Mr. Hollow Horn's job duties expanded to an eight-hour work day in which he was required to supervise students, and perform custodial duties, including cleaning, sweeping and mopping floors, hauling trash and performing other duties as assigned.  Id.    ¶ 29-31.  Dr. Schleusener suggested Mr. Hollow Horn should try to perform these new job assignments.  Id. ¶ 32.  About a week later, Mr. Hollow Horn reported back to Dr. Schleusener, who changed the work restrictions and limited Mr. Hollow Horn to working two hours in the morning and two hours in the afternoon.  Id. When the Porcupine School could not accommodate these work restrictions, it asked Mr. Hollow Horn to resign.  Id. ¶ 35.  Mr. Hollow Horn resigned shortly thereafter.  Id.  On September 30, 2011, FirstComp denied Mr. Hollow Horn's claims for further medical or wage replacement benefits under the South Dakota workers' compensation statutes.  Id. ¶ 37.

On March 28, 2012, Dr. Schleusener performed his last physical examination of Mr. Hollow Horn.  Id.; see also Docket 1-1 ¶ 24.  Dr.

Schleusener recommended Mr. Hollow Horn remain on the work and lifting restrictions imposed earlier.  Docket 1-1 ¶ 24.  On April 3, 2012, Dr. Schleusener gave Mr. Hollow Horn a disability rating for Social Security benefits purposes, identified his work restrictions and detailed the work he was capable of performing, including a restriction that he was unable to drive a bus.  (Docket 1 ¶¶ 38-39).

On June 11, 2012, Mr. Hollow Horn filed a petition with the Division of Labor and Management seeking workers' compensation benefits for his 2011 injury.  Id. ¶ 40.  On April 25, 2013, at FirstComp's direction, Mr. Hollow Horn submitted to a medical examination by Dr. Nolan Segal.  Id. ¶ 41.  It was Dr. Segal's opinion Mr. Hollow Horn's back condition was the result of degenerative and hypertrophic disc disease and Scheuermann juvenile disc disease.  Id. ¶ 42.  Dr. Segal's opinion was that any work injuries were "at most . . . temporary aggravations of his preexisting degenerative condition."  Id. ¶ 43.  Dr. Segal's causation opinion for workers' compensation purposes was that Mr. Hollow Horn's back condition, his disability rating and his need for treatment were never work related, but were directly caused by his degenerative disc disease.  Id. ¶¶ 47-48.

Dr. Segal's opinion contradicted FirstComp's stipulation with Mr. Hollow Horn in the earlier workers' compensation proceeding that his 2008 injury was compensable as an 8 percent whole person permanent partial disability.[3]  Id. ¶ 49.  Dr. Segal agreed with Dr. Schleusener's work restriction that Mr. Hollow

[3]FirstComp did not disclose to either Dr. Segal or Dr. Farnham, whose opinions mirrored Dr. Segal's opinions, that FirstComp stipulated Mr. Hollow Horn's 2008 injury was compensable and resulted in an 8 percent whole person permanent partial disability.  (Docket 1 ¶ 103).

Horn should not lift more than 25 pounds or engage in repetitive bending, twisting, lifting, crawling or any high impact type physical activities at work. Compare id. ¶¶ 27 & 68. Dr. Segal imposed an additional restriction that Mr. Hollow Horn could not drive on rural or pot-holed roads. Id. ¶ 76.

The work restrictions imposed by both Dr. Schleusener and Dr. Segal made the work activities assigned to Mr. Hollow Horn at the beginning of the 2011-12 school year beyond his physical capabilities. Id. ¶ 69. Mr. Hollow Horn's vocational consultant, Richard Ostrander, found Mr. Hollow Horn "obviously unemployable" given his physical restrictions, location of residency, age and abilities. (Docket 1-1 at p. 8 ¶ 56).

On August 12, 2013, FirstComp offered to settle Mr. Hollow Horn's workers' compensation claim for $2,000. (Docket 1 ¶ 113). It made the same offer a second time on November 4, 2013. Id.

FirstComp hired Thomas Karrow as its vocational consultant for Mr. Hollow Horn's claim. Id. ¶ 73. When speaking with potential employers, Mr. Karrow did not discuss the physical limitations imposed by Dr. Schleusener or Dr. Segal. Id. ¶¶ 76 & 79. When he identified a potential employer with an open bus driver position, Mr. Karrow did not discuss those restrictions as they would preclude Mr. Hollow Horn from qualifying for the position. Id. ¶ 77. FirstComp continued to assert in the 2012-15 workers' compensation proceedings that Mr. Hollow Horn could work as a bus driver, even though the requirements for that position were not supported by the opinions of Dr. Segal. Id. ¶ 70.

The Division of Labor and Management held a workers' compensation hearing on September 19, 2014. Id. ¶ 87. On September 4, 2015, an ALJ entered a written decision rejecting FirstComp's expert witnesses and finding in favor of Mr. Hollow Horn. Id. ¶ 88. Findings of Fact and Conclusions of Law and an Order were entered on November 4, 2015. Id. ¶ 89 (referencing Docket 1-1). The ALJ found Mr. Hollow Horn was entitled to permanent total disability benefits from the time of his discharge from employment on September 15, 2011, together with medical benefits for his back pain condition.[4] (Docket 1-1 at p. 13 ¶¶ 14-14). The decision awarded Mr. Hollow Horn past due benefits as of October 1, 2015, of $90,483.14, together with accrued interest of $21,695.50. Id. ¶¶ 19 & 20. Future lifetime permanent total disability benefits were calculated and discounted to the date of the ALJ's decision as $360,485.24. Id. at p. 14 ¶ 24.

FirstComp appealed the ALJ's decision to the Sixth Judicial Circuit Court, Hughes County, Pierre, South Dakota. Id. ¶ 91 (referencing Docket 1-2). On June 15, 2016, Circuit Court Judge Mark Barnett issued a 19-page opinion denying FirstComp's appeal and affirming the decision of the Division of Labor and Management. (Docket 1-2 at p. 20).

On August 4, 2016, FirstComp paid past due benefits and accrued interest to Mr. Hollow Horn of $139,720.82. (Docket 1 ¶ 115). From his future

---

[4]"An employee is permanently totally disabled if the employee's physical condition, in combination with the employee's age, training and experience and the type of work available in the employee's community, cause the employee to be unable to secure anything more than sporadic employment resulting in an insubstantial income." SDCL § 62-4-53.

permanent total disability benefits Mr. Hollow Horn paid attorney fees, costs and taxes of $163,966.95.[5]  Id. ¶ 116.  Because these fees, costs and taxes were actually paid through FirstComp, Mr. Hollow Horn's future weekly benefit rate was reduced from $442.99 to $284.48.  Id. ¶ 117.  FirstComp was ordered by the Division of Labor and Management to pay Mr. Hollow Horn $284.48, together with future cost-of-living adjustments, per month for the remainder of his life.  Id. ¶ 118.

Based on this summary of facts and those stated in more detail in the complaint, Mr. Hollow Horn asserts the four causes of action against FirstComp.  (Docket 1 at pp. 15-18).  FirstComp's answer admits the contents of the medical records, depositions and rulings of the ALJ and Judge Barnett, but in general denies the implications asserted by plaintiff as to the legal ramifications of the history of this case.  (Docket 10).

BAD FAITH CLAIM

In order to prove a claim of bad faith in dealing with his workers' compensation claim, Mr. Hollow Horn must show FirstComp "unreasonably delayed payment . . . with an absence of a reasonable basis for the delay, and [that he] suffered a compensable loss as a result . . . ."  McDowell v. Citicorp U.S.A., 734 N.W.2d 14, 19 (S.D. 2007).   Mr. Hollow Horn "must demonstrate that there was an absence of a reasonable basis for the delay and [FirstComp's] knowledge, or reckless disregard, of the absence of a reasonable basis."  Id.

---

[5]An ALJ authorized this payment pursuant to SDCL § 62-7-36, which permits a lump sum payment of attorney's fees at 30 percent of the disputed amount when a case is appealed to the circuit court, together with sales tax and costs.  See Dockets 10-1 & 10-8.

Mr. Hollow Horn's complaint makes that claim, alleging "First Comp unreasonably denied and delayed providing worker's compensation benefits to Hollow Horn, as required by law and contract." (Docket 1 ¶ 123).

FirstComp argues plaintiff's bad faith claim must be dismissed under Rule 12(c), because Mr. Hollow Horn's workers' compensation claim was "fairly debatable either in fact or in law." (Docket 14 at p. 6) (referencing Dakota, Minnesota & Eastern R.R. Corp. v. Acuity, 771 N.W.2d 623, 629 (S.D. 2009)). It contends "[t]he fact that the insurer's position is ultimately found to lack merit is not sufficient by itself to establish that the insurer did not have a reasonable basis to deny the claim. The focus is on the existence of a debatable issue, not on which party was correct." Id. FirstComp submits the ALJ was faced with "competing expert opinions along with the need to weigh testimony." Id. at p. 8. FirstComp argues in 2011 there existed a "factual dispute" as to whether Mr. Hollow Horn was injured in the manner he described or whether it was the result of "non-work related conditions." Id. at pp. 8-9.

FirstComp argues "the claimed 2011 injury did not result in a change in [a preexisting] degenerative status." Id. at p. 9. It asserts the carrier "had medical opinions challenging the opinions of treating physicians and which supported a conclusion that the event claimed was, at best, a temporary aggravation of underlying degenerative conditions." Id. FirstComp argues Dr. Schleusener "testified that 50% of plaintiff's complaints and disability was related to his degenerative condition and obesity, conditions that were not

10

work-related." Id. FirstComp submits the ALJ had to resolve "the factual disputes and issues of credibility . . . ." Id. Because Mr. Hollow Horn's claim was "fairly debatable," FirstComp argues Mr. Hollow Horn's bad faith claim cannot proceed. Id.

In addition, FirstComp argues that even if the bad faith claim is allowed to proceed, Mr. Hollow Horn has no recoverable damages. Id. at p. 10. According to FirstComp "[a]ll benefits . . . identified by the Department of Labor were paid. . . . Without an uncompensated loss, plaintiff lacks the necessary predicate to a claim for bad faith." Id. at pp. 10-11.

Plaintiff's response to defendant's Rule 12(c) motion is that FirstComp "ignore[s] the full context of the allegations in the Complaint and that matters which have been resolved in previous litigation. . . . [T]hose issues are resolved as a matter of *res judicata.*" (Docket 16 at pp. 1-2). Mr. Hollow Horn alleges once it secured a favorable medical opinion, FirstComp failed to advise Dr. Segal it had agreed the 2008 injury was work related and resulted in a permanent partial disability which it paid. (Docket 1 ¶ 103). He contends FirstComp knew, because of its earlier judicial admission, that Dr. Segal's opinion did not provide a reasonable basis for denying the claim or defending the claim before the Division of Labor and Management. Id. ¶¶ 52-53. Mr. Hollow Horn alleges Dr. Segal's opinions were obviously unreliable and unreasonable because his opinions contradicted the known medical history and the past decision by FirstComp to accept the 2008 work injuries resulting in permanent disability and compensable. Id. ¶ 51. He alleges that as a

matter of law Dr. Segal's causation opinion was barred because FirstComp attempted to argue a "better set of facts" than the facts it had stipulated to regarding the 2008 back injury.  Id. ¶ 56 (referencing Docket 1-1 at p. 12 ¶ 5). Mr. Hollow Horn alleges FirstComp persisted with Dr. Segal's causation opinion through the Circuit Court appeal.  Id. ¶ 54 (referencing Docket 1-1 at p. 12 ¶ 6) ("Dr. Segal's causation opinion is estopped from being heard or considered because it rejects the compensability of the 2008 claim, in contradiction of the stipulated facts.") (referencing Hayes v. Rosenbaum Signs & Outdoor Advertising Inc., 853 N.W.2d 878 (S.D. 2014)).   In its reply brief before the Circuit Court, FirstComp acknowledged there was "credible medical evidence" which supported Mr. Hollow Horn's claim he "suffered an injury in the course and scope of his employment on May 31, 2011." (Docket 1-2 at p. 6 n.1).

Mr. Hollow Horn also alleges FirstComp knew, or should have known, that vocational testimony similar to Mr. Karrow's opinions had been rejected by the South Dakota Supreme Court in 2007.  Id. ¶ 81 (referencing Docket 1-1 at p. 12 ¶ 7) (referencing Eite v. Rapid City Area School District, 739 N.W.2d 264, 273 (S.D. 2007) (district's vocation expert's "listing of jobs that focuses on a claimant's capabilities to the exclusion of his limitations is insufficient as a matter of law.  When prospective employers were not informed of the nature of the limitations they needed to accommodate, there was no basis for the expert's opinion in concluding that the employers were willing to make modifications to meet those limitations.").  Because of this obvious deficiency, Mr. Hollow Horn

alleges the ALJ found Mr. Karrow's opinion insufficient as a matter of law.  Id.
¶ 82 (referencing Docket 1-1 at p. 11 ¶ 8) (referencing Eite, 739 N.W.2d at 273).

In reviewing a Rule 12(c) challenge, "[t]he issue is not whether a claimant
will ultimately prevail but whether the claimant is entitled to offer evidence to
support the claims.  Indeed it may appear on the face of the pleadings that a
recovery is very remote and unlikely but that is not the test."  Pinnacle Pizza
Co., v. Little Caesar Enterprises, Inc., 395 F. Supp. 2d 891, 896-97 (D.S.D.
2005) (citing Scheuer v. Rhodes, 416 U.S. 232, 236 (1974), *overruled on other*
*grounds by* Davis v. Scherer, 468 U.S. 183, 191 (1984)).

In Hayes, the South Dakota Supreme Court specifically addressed the
opinions of Dr. Segal, the same physician employed by FirstComp to conduct
the examination of Mr. Hollow Horn.  "Dr. Segal concluded that as of November
6, 2007, 100 percent of Hayes' back problems were attributable to his pre-
existing conditions."  Hayes, 853 N.W.2d at 883.  The court declared that it is
not "the intent of workers' compensation statutes to allow employers to retain
new experts to derive new positions based on the same facts contrary to what
was previously admitted and judicially accepted, and have the employee again,
and continually, bear the burden of proving what was previously settled by
agreement or action under SDCL 62–7–12."  Id. at 883–84.  "Judicial estoppel
. . . prevents Employer[s] from intentionally asserting an inconsistent position
that would pervert the judicial machinery."  Id. at 884.

Hayes was issued 23 days before the ALJ conducted Mr. Hollow Horn's
workers' compensation hearing on September 19, 2014.  Yet FirstComp

persisted in advocating Dr. Segal's causation opinion through the Division of Labor and Management proceeding in 2012-15 and through nearly the conclusion of the Circuit Court appeal in 2016.

Addressing Mr. Hollow Horn's allegation of bad faith against FirstComp for using Mr. Karrow's vocational opinions, the court makes the following observation. Relevant to the 2012-15 time period of Mr. Hollow Horn's workers' compensation claim, the Division of Labor and Management citing <u>Eite</u> rejected similar vocational testimony in three cases. <u>See</u> <u>Carol Hatten, Claimant v. Aramark Corp.–South Dakota School of Mines, Employer & Specialty Risk Services., Inc., Insurer</u>, HF No. 111, 2005/06, 2008 WL 4893991, at *6 (S.D. Dept. Lab. August 14, 2008); <u>Melissa Rowe, Claimant v. Rapid City Regional Hospital, Employer & Farm Bureau Mutual Ins. Company, Insurer</u>, HF No. 124, 2005/06, 2008 WL 4893995, at *10 (S.D. Dept. Lab. September 25, 2008); <u>Thomas Tuttle, Claimant v. Dewitt Builders Inc., Employer & Midwest Family Mutual Ins. Co., Insurer</u>, HF No. 126, 2009/10, 2011 WL 915612, at *8 (S.D. Dept. Lab. February 24, 2011). In each of these cases, the vocational consultant, like Mr. Karrow, failed to disclose the limitations of the claimant, instead of focusing on his aptitudes to identify jobs for which a claimant may be qualified. In each of these earlier cases, the Division of Labor and Management, like it did in Mr. Hollow Horn's case, rejected the testimony as deficient as a matter of law under <u>Eite</u>. <u>Hatten</u>, 2008 WL 4893991, at *6; <u>Rowe</u>, 2008 WL 4893995, at *10; <u>Tuttle</u>, 2011 WL 915612, at *8. These precedential rulings by the Division of Labor and Management arguably put

FirstComp on notice that Mr. Karrow's opinions were at risk of being rejected by an ALJ.

Whether Mr. Hollow Horn's injury was fairly debatable or whether FirstComp's continued advocacy of the opinions of Dr. Segal and Mr. Karrow constituted a bad faith denial of Mr. Hollow Horn's workers' compensation claim remains to be seen. Mr. Hollow Horn has "asserted facts that if true, state a claim for bad-faith denial of a workers' compensation claim and that [FirstComp's] reliance on Dr. Segal's report to deny benefits was not per se reasonable." Mordhorst v. Dakota Truck Underwriters & Risk Administration Services, 886 N.W.2d 322, 326 (S.D. 2016).

FirstComp's claim Mr. Hollow Horn cannot prevail on his bad faith claim because he suffered no damages is without merit. It is true the statutory benefits due Mr. Hollow Horn under the South Dakota workers' compensation statutory plan were paid. However, any emotional damages or financial damages allegedly caused to Mr. Hollow Horn by the alleged delay in payment of statutory benefits have not been resolved. Plaintiff alleges he "and his family suffered financially and emotionally. . . . over the five years in which he went without wage replacement." (Docket 16 at p. 11). See also (Docket 1 ¶ 1) (FirstComp "engaged in a five year long campaign of denial and delay, to deprive Hollow Horn of his benefits . . . . During the five-years of unwarranted delay and denial, Hollow Horn suffered financial and emotional hardship which is not remedied simply by First Comp['s] . . . payment of the benefits it knowingly owed all along."). These claimed damages, if proven at trial, are

recoverable in the bad faith tort action.  <u>Fix v. First State Bank of Roscoe</u>, 807

N.W.2d 612, 617 (S.D. 2011) (internal citations omitted).

By the allegations of plaintiff's complaint, Mr. Hollow Horn alleged

"enough details . . . to present a story that holds together."  <u>Swanson</u>, 614 F.3d

at 404.  The plausibility standard of Rule 12(c) compels the court to deny

defendant's motion to dismiss the bad faith claim because these things "could

. . . have happened."  <u>Id.</u>

BARRATRY

Barratry is defined in South Dakota law:

Barratry is the assertion of a frivolous or malicious claim or
defense or the filing of any document with malice or in bad faith by
a party in a civil action.  Barratry constitutes a cause of action
which may be asserted by filing a pleading in the same civil action
in which the claim of barratry arises or in a subsequent action.  A
claim of barratry shall be determined in the same manner as any
other substantive cause of action asserted in that civil action.

SDCL § 20-9-6.1.  "To fall to the level of frivolousness there must be such a

deficiency in fact or law that no reasonable person could expect a favorable

judicial ruling. . . . Frivolousness connotes an improper motive or a legal

position so wholly without merit as to be ridiculous."  <u>Pioneer Bank & Trust v.</u>

<u>Reynick</u>, 760 N.W.2d 139, 143 (S.D. 2009) (internal citation, quotation marks

and brackets omitted).  "An action is malicious if it is begun in malice and

without probable cause to believe it can succeed, and which finally ends in

failure. . . . Malice exists when the proceedings are instituted primarily for an

improper purpose."  <u>Id.</u> (internal citation, quotation marks and brackets

omitted).

FirstComp seeks dismissal of plaintiff's barratry claim because it relies upon the same allegations as the bad faith claim and seeks recovery for the same damages. (Docket 14 at p. 13). In addition to the facts alleged in support of his bad faith claim, Mr. Hollow Horn makes the following allegation:

> First Comp forced Hollow Horn to file legal proceedings to receive workers' compensation benefits. When he did so, First Comp filed documents and asserted defenses which they knew to be false, without merit, that were frivolous, disingenuous, malicious, lacked a reasonable basis in fact, were asserted for purposes of delay or other improper purpose, were filed with malice and in bad faith, or that had no rational argument in evidence or law to support its claims.

(Docket 1 ¶ 131).

Mr. Hollow Horn argues "[i]t was frivolous for FirstComp to assert the opinions of Dr. Segal and Mr. Karrow, because they were clearly inadmissible. These opinions did not create questions of fact. They only served to delay the award of benefits and increase the financial and emotional suffering of Hollow Horn while he went without workers' compensation benefits for years—from 2011 to 2016." (Docket 16 at pp. 22-23).

As with his claim of bad faith, by the allegations of the barratry claim Mr. Hollow Horn has alleged "enough details . . . to present a story that holds together." Swanson, 614 F.3d at 404. The plausibility standard of Rule 12(c) compels the court to deny defendant's motion to dismiss the barratry claim because conduct alleged against FirstComp "could . . . have happened." Id.

<u>ABUSE OF PROCESS</u>

"Abuse of process consists of the malicious misuse or misapplication of legal process after its issuance to accomplish some collateral purpose not warranted or properly attainable thereby." <u>Layton v. Chase</u>, 144 N.W.2d 561, 563 (S.D. 1966). "It is not an action for maliciously causing legal process to be issued." <u>Id.</u> The "essential elements" of an abuse of process claim include: "(1) The existence of an ulterior purpose, and (2) A willful act in the use of the process not proper in the regular prosecution of the proceeding." <u>Id.</u>

FirstComp seeks dismissal of plaintiff's abuse of process claim because it relies upon the same allegations as the bad faith claim and seeks recovery for the same damages. (Docket 14 at p. 13). In support of his abuse of process claim, in addition to the allegations discussed above, Mr. Hollow Horn alleges the following:

> First Comp engaged in abuse of process by using the administrative and appellate processes for an ulterior and improper purpose, to deny Hollow Horn workers' compensation benefits, to obtain a settlement of Hollow Horn's claim for far less than it knew was owed, and to send a message to other injured workers that it will not litigate matters fairly, but will assert contradictory factual positions through hearing and appeal. . . .
>
> First Comp did so knowing Dr. Segal's [medical examination], Dr. Farnham's record review, and Mr. Karrow's vocational opinion offered no factual or legal basis to deny the claim. . . .
>
> First Comp engaged in an abuse of process by intentionally asserting an inconsistent position from its admissions, in order to force further proceedings. . . .
>
> First Comp's use of the legal system here was:
>
> > i. An attempt to reduce its own costs by refusing to provide all worker's compensation benefits.

18

       ii.    An attempt to communicate a message to Hollow Horn and other employees that First Comp will not address workers' compensation claims in good faith, but will require injured workers pursue legal proceedings to receive undisputed benefits.

(Docket 1 ¶¶ 133-36).

As with his claims of bad faith and barratry, by the allegations of the abuse of process claim Mr. Hollow Horn has alleged "enough details . . . to present a story that holds together." Swanson, 614 F.3d at 404. The plausibility standard of Rule 12(c) compels the court to deny defendant's motion to dismiss the abuse of process claim because the allegations against FirstComp "could  . . . have happened." Id.

PUNITIVE DAMAGES

South Dakota does not recognize an "independent cause of action for punitive damages . . . . Punitive damages are not available unless a tort has been committed." O'Neill v. O'Neill, 876 N.W.2d 486, 496 (S.D. 2016) (citing Berry v. Time Ins. Co., 798 F. Supp. 2d 1015, 1022 (D.S.D. 2011) (citing Schaffer v. Edward D. Jones & Co., 521 N.W.2d 921, 928 (S.D. 1994) (punitive damages are not an independent cause of action, but may be awarded in addition to compensatory damages).   While Mr. Hollow Horn's claim for punitive damages cannot proceed as a separate cause of action, it may be considered as a separate category of damages in his prayer for relief.

FirstComp seeks dismissal of plaintiff's punitive damages claim because they "are not ordinarily recoverable in actions for breach of contract, because, as a general rule, damages for breach of contract are limited to the pecuniary

loss sustained." (Docket 14 at pp. 17-18) (citing <u>Hoffman v. Louis Dreyfus Corp.</u>, 435 N.W.2d 211, 214 (S.D. 1989)). FirstComp argues Mr. Hollow Horn "has received all compensation he is entitled to through the worker's compensation claim." <u>Id.</u> at p. 18.

Mr. Hollow Horn's punitive damages count alleges the following:

Defendant acted with malice, oppression, and deliberate and reckless disregard for the rights of Hollow Horn. . . .

Defendant acted in accordance with their standard, practices, policies, and procedures in worker's compensation cases, pursuant to a plan to unlawfully minimize claim expenses by denying legitimate claims and withholding benefits until injured workers accept unreasonably low settlement offers. . . .

Defendant did so knowing that injured workers rarely have competent legal counsel available to them to defend the injured worker's rights after these rights are determined by the Department of Labor proceedings. . . .

Therefore, injured workers, who have already had their right to benefits determined, are at the mercy of Defendant's arbitrary, baseless, and disingenuous denials. . . .

Plaintiff is entitled to an award of punitive damages as the only way to deter workers compensation insurers from continuing to employ the same methods against other injured employees.

(Docket 1 ¶¶ 138-142). Mr. Hollow Horn argues his claims are tort based, making punitive damages recoverable. (Docket 16 at p. 25). He asserts "[t]here are sound policy reasons for punitive damages in bad faith actions, because of the 'special relationship' between workers' compensation insurers and injured workers, long recognized in South Dakota." <u>Id.</u> (referencing <u>Trouten v. Heritage Mutual Ins. Co.</u>, 632 N.W.2d 856, 862-64 (S.D. 2001)). Mr. Hollow Horn submits "[t]he factual allegation[s] in the Complaint show

'malice' sufficient in these tortious acts to survive a challenge to punitive damages under Fed. R. Civ. P. 12(c)." Id. at p. 26.

Punitive damages are available "[i]n any action for the breach of an obligation not arising from contract, where the defendant has been guilty of oppression, fraud, or malice, actual or presumed." SDCL § 21-3-2. "An insurer's clear breach of contract or denial of a claim that is not fairly debatable may indicate malice." Bertelsen v. Allstate Ins. Co., 796 N.W.2d 685, 699 (S.D. 2011) (citations omitted).

"South Dakota courts have found that '[a]n insurer's clear breach of contract or denial of a claim that is not fairly debatable may indicate malice.' " Haney v. American Family Mutual Ins. Co., 223 F. Supp. 3d 921, 928 (D.S.D. 2017) (citing Bertelsen, 796 N.W.2d at 699). "[M]alice is either actual or presumed." Id. "Actual malice is a positive state of mind, evidenced by a positive desire and intention to injure one another, actuated by hatred or ill will towards that person. Presumed malice may not, however, be motivated by hatred or ill will, but is present when a person acts willfully or wantonly to the injury of others." Case v. Murdock, 488 N.W.2d 885, 891 (S.D. 1992).

FirstComp's argument is without merit. Mr. Hollow Horn's complaint pled a viable cause of action for bad faith against FirstComp. For the same reasons discussed above in relation to the bad faith claim, the court finds a genuine issue exists regarding whether FirstComp's denial of Mr. Hollow Horn's workers' compensation claim was reasonable or reckless. The court finds an issue also exists regarding whether FirstComp's investigation of Mr. Hollow

Horn's claim through Dr. Segal and Mr. Karrow was reasonable. If Mr. Hollow Horn prevails on that claim, he is entitled to ask that punitive damages be assessed against the defendant.

## ORDER

Based on the above analysis, it is

ORDERED that defendant's motion to dismiss pursuant to Fed. R. Civ. P. 12(c) (Docket 13) is denied.

IT IS FURTHER ORDERED that plaintiff's motion (Docket 30) is granted.

Dated March 29, 2018.

BY THE COURT:

/s/ *Jeffrey L. Viken*

JEFFREY L. VIKEN
CHIEF JUDGE