UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

WESTERN DIVISION

| | |
|---|---|
| HAROLD HOLLOW HORN,<br><br>                   Plaintiff,<br><br>        vs.<br><br>FIRSTCOMP INSURANCE COMPANY,<br><br>                   Defendant. | CIV. 17-5016-JLV<br><br><br>ORDER |

**INTRODUCTION**

Plaintiff Harold Hollow Horn filed a multi-count complaint against the defendant FirstComp Insurance Company ("FirstComp").  (Docket 1). Plaintiff alleges four causes of action in his complaint: count I, bad faith; count II, barratry, count III, abuse of process; and count IV, punitive damages.  Id. at pp. 15-18.  FirstComp filed an answer denying the allegations in plaintiff's complaint (Docket 10) and subsequently filed a motion to dismiss plaintiff's complaint pursuant to Fed. R. Civ. P. 12(c). (Docket 13).  The court denied FirstComp's motion to dismiss.  (Docket 35). Now pending are the parties' cross-motions for summary judgment pursuant to Fed. R. Civ. P. 56.

Defendant FirstComp filed its motion for summary judgment together with a legal memorandum, a statement of undisputed material facts and three affidavits with attached exhibits.  (Dockets 77 through 82).  Plaintiff filed a response to defendant's motion for summary judgment together with

a response to defendant's statement of facts and an affidavit with three exhibits.  (Dockets 100 through 102).  FirstComp filed a reply brief together with an affidavit and four exhibits.  (Dockets 111 & 112).

Plaintiff filed his motion for summary judgment together with a legal memorandum, a statement of undisputed material facts and an affidavit with attached exhibits.  (Dockets 83 through 86).  Defendant filed a response to plaintiff's motion for summary judgment together with a response to plaintiff's statement of facts and three affidavits with attached exhibits.  (Dockets 95 through 99).  Plaintiff filed a reply brief in support of his motion.  (Docket 110).

For the reasons stated in this order, defendant's motion for summary judgment is granted in part and denied in part, and plaintiff's motion for summary judgment is granted in part and denied in part.

## I.    LEGAL STANDARD

Under Fed. R. Civ. P. 56(a), a movant is entitled to summary judgment if the movant can "show that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  Once the moving party meets its burden, the nonmoving party may not rest on the allegations or denials in the pleadings, but rather must produce affirmative evidence setting forth specific facts showing that a genuine issue of material fact exists.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986).  Only disputes over facts that might affect the outcome of the case under the governing substantive law will properly preclude summary judgment.  Id. at

2

p. 248.  "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." Id. at 247-48 (emphasis in original).

If a dispute about a material fact is genuine, that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party, then summary judgment is not appropriate.  Id.  However, the moving party is entitled to judgment as a matter of law if the nonmoving party failed to "make a sufficient showing on an essential element of [his] case with respect to which [he] has the burden of proof."  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  In such a case, "there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."  Id. at p. 323.

In determining whether summary judgment should issue, the facts and inferences from those facts must be viewed in the light most favorable to the nonmoving party.  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587-88 (1986).  The key inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law."  Anderson, 477 U.S. at pp. 251-52.

II.   **FACTS**

The following recitation consists of the material facts developed from the complaint (Docket 1), the South Dakota Division of Labor and Management decision (Docket 1-1), the South Dakota Sixth Judicial Circuit Court decision (Docket 1-2), defendant's answer (Docket 10), the parties' statements of undisputed material facts (Dockets 79 & 84) and other evidence where indicated.

Except for a three-year period from 1999 to 2001, Mr. Hollow Horn was employed by Porcupine Contract School as a full-time bus driver from 1992 until his resignation in mid-September 2011.  (Docket 1 ¶¶ 9, 10 & 35).[1]  FirstComp was the workers' compensation insurer for Porcupine Contract School at all times material to this case.  Id. ¶ 7.  In 2008, Mr. Hollow Horn suffered a low back injury in the course of his work.  Id. ¶¶ 11. In March 2008, he injured his back while helping to move a large air compressor at work, and in April 2008 he slipped on the bus steps and again injured his back.  Id.  ¶¶ 12-13.  Dr. deGrange of Black Hills Orthopedics in Rapid City, South Dakota, determined Mr. Hollow Horn suffered an 8 percent whole person impairment and attributed 50 percent of his disability to his work injuries.  Id. ¶¶ 14-15 & 25.

---

[1]A significant number of the paragraphs in the complaint refer to the Division of Labor and Management and Sixth Judicial Circuit Court decisions. The court adopts those references but only cites to the complaint unless otherwise indicated.

On March 1, 2009, FirstComp paid Mr. Hollow Horn a lump sum payment of $9,205.25 for permanent partial disability ("PPD") benefits based on the 8 percent whole person impairment.  Id. ¶ 16; see also Docket 84 at p. 2 ¶¶ 8-10.  The payment was memorialized in a Form 111, Memorandum of Payment for Permanent Partial Disability, filed with the South Dakota Department of Labor, Division of Labor and Management ("DOL") on March 9, 2009.  See Docket 86-3.

In May 2011, Mr. Hollow Horn again injured his back in the course of his work, this time when he was operating the bus and twisted to look over his left shoulder while simultaneously driving over a pot hole, rocking the bus to the right and jarring Mr. Hollow Horn's lower back.  (Docket 1 ¶¶ 21-22).  Dr. Rand Schleusener of Black Hills Orthopedics treated Mr. Hollow Horn following his re-injury.  Id. ¶ 24-25.  An MRI taken after the 2011 injury showed Mr. Hollow Horn to be in the same general condition as indicated by an earlier MRI taken after his 2008 injuries, that is, Mr. Hollow Horn had "mild left lumbar scoliosis with multilevel degenerative disc disease and disc displacement."  Id. ¶ 44.  Dr. Schleusener gave the opinion the 2011 injury was an aggravation of the 2008 injury.  Id. ¶ 26.  FirstComp paid Mr. Hollow Horn temporary total disability ("TTD") wage-replacement benefits.  (Docket 79 at p. 2 ¶ 6).

On August 16, 2011, Mr. Hollow Horn told FirstComp's claims adjuster, Carol Von Eschen, over the phone that he had been outside fixing his daughter's swing.  Id. at p. 3 ¶ 13.

5

On August 30, 2011, Dr. Schleusener determined Mr. Hollow Horn had reached maximum medical improvement ("MMI").  Id. at p. 2. ¶ 8.  He released Mr. Hollow Horn to return to work as a bus driver with a 25-pound lifting restriction.  Id. at p. 2 ¶ 9.  That same day, Leslie Cournoyer from Porcupine Contract School told FirstComp's case manager the school could accommodate Dr. Schleusener's lifting restriction.[2]  Id. at p. 3 ¶ 14. FirstComp discontinued TTD benefits as of that date.  Id. at p. 2 ¶ 6.

Mr. Hollow Horn returned to work at the beginning of the 2011-12 school year.  (Docket 1 ¶ 29).  At that time, Mr. Hollow Horn's job duties were expanded by his employer.  Id. ¶¶ 30-31 & 62-63.  Rather than driving the bus for a couple hours each in the morning and afternoon, he was expected to work an 8-hour day, driving the bus in the morning and afternoon and performing other duties as assigned in between, including custodial duties such as supervising students, cleaning, sweeping and mopping floors and hauling trash.  Id. ¶¶ 30-31 & 34.

On September 7, 2011, Mr. Hollow Horn left a voicemail for FirstComp in which he said he had returned to work and had some pain, but it felt good to be back at work.  (Docket 79 at p. 4 ¶ 17).  That same day, he also

---

[2]Mr. Hollow Horn admits this conversation may have occurred but denies as untrue that the school could accommodate the 25-pound lifting restriction imposed by Dr. Schleusener.  See Docket 100 at p. 4.  Mr. Hollow Horn draws the court's attention to notes by FirstComp's case manager, including a note dated September 7, 2011, where the case manager writes "I followed up with the school today.  The job description says 100 pounds and he is @ 25 pounds. They have to have the school board approve the offer of RTW @ modified duty." Id.

wrote a letter to FirstComp confirming he had returned to work, and stating he was still in pain from his May 2011 injury and had been advised he would permanently experience low back pain.  Id. at p. 4 ¶ 16.  On September 8, Ms. Von Eschen spoke with Mr. Hollow Horn's supervisor at the school, who indicated Mr. Hollow Horn was not working the full eight hour days pursuant to his new, expanded duties, but rather was driving the bus only in the mornings and afternoons and not working in between.  Id. at p. 4 ¶ 18.  The supervisor also said he called Mr. Hollow Horn at home the day prior and described that Mr. Hollow Horn's daughter initially answered the phone.  He heard a lawnmower running in the background.  Id.  When he asked to speak with Mr. Hollow Horn, the supervisor heard the lawnmower turned off, and Mr. Hollow Horn came to the phone breathless. Id.

Mr. Hollow Horn tried to perform his new expanded work duties, but ultimately reported to Dr. Schleusener after about a week that he was unable to do so.  (Docket 1 ¶ 33).  Dr. Schleusener implemented work restrictions for Mr. Hollow Horn, limiting him to his past performance levels of working two hours each in the mornings and afternoons.  Id. ¶ 34.  When Porcupine Contract School could not accommodate these work restrictions, it asked Mr. Hollow Horn to resign.  Id. ¶ 35.  Mr. Hollow Horn resigned shortly thereafter in mid-September.  Id.; see also Docket 84 at p. 3 ¶ 24. He was officially discharged on September 15, 2011.  (Docket 84 at p. 4 ¶ 26).

7

Also in September 2011, FirstComp arranged for Dr. Richard Farnham to conduct a medical records review of Mr. Hollow Horn's low back condition.  Dr. Farnham gave the opinion Mr. Hollow Horn's low back pain may have been temporarily exacerbated by work-related activities, but the cause of his back condition was not at all work-related but rather degenerative and congenital.  (Docket 79 at p. 3 ¶ 12).

On September 29, Mr. Hollow Horn advised FirstComp he had gone to see the principal at Porcupine Contract School about his job and hoped he would get it back.  Id. at p. 5 ¶ 20.

On September 30, 2011, FirstComp sent a letter to Mr. Hollow Horn denying his claim for further medical or wage replacement benefits under South Dakota workers' compensation statutes.  (Docket 1 ¶ 37).  The letter was not sent to the DOL.  (Docket 84 at p. 4 ¶ 29).

In April 2012, Dr. Schleusener gave Mr. Hollow Horn a disability rating for Social Security benefits purposes, identified his work restrictions and detailed the work he could perform, including a restriction that he was unable to drive a bus.  (Docket 1 ¶¶ 38-39).

On June 11, 2012, Mr. Hollow Horn filed a claim with the DOL seeking workers' compensation benefits for his 2011 injury.  Id. ¶ 40.

In support of his claim, Mr. Hollow Horn hired vocational consultant Richard B. Ostrander.  (Docket 1-1 at p. 8).  Mr. Ostrander was of the opinion Mr. Hollow Horn was unemployable given his physical restrictions, location of residency, age and abilities, and there was no work in Mr. Hollow

Horn's geographic area that would meet the restrictions imposed on Mr. Hollow Horn by his doctors and still allow him to earn 85 percent of his pre-injury earning capacity.  Id.

On April 25, 2013, at Firstcomp's direction, Mr. Hollow Horn submitted to an independent medical examination ("IME") by Dr. Nolan Segal.  (Docket 1 ¶ 41).  FirstComp did not disclose to Dr. Segal that FirstComp previously stipulated Mr. Hollow Horn's 2008 injury was compensable and resulted in an 8 percent whole person permanent partial disability.  Id. ¶ 103.  Dr. Segal gave the opinion Mr. Hollow Horn's back condition was the result of degenerative and hypertrophic disc disease and Scheuermann juvenile disc disease.  Id. ¶ 42.  Dr. Segal's opinion was that any work injuries were "at most . . . temporary aggravations of his preexisting degenerative condition."  Id. ¶ 43.  Dr. Segal's causation opinion for workers' compensation purposes was that Mr. Hollow Horn's back condition, his disability rating and his need for treatment were never work related but were directly caused by his degenerative disc disease.  Id. ¶¶ 47-48; see also Docket 79 at p. 9 ¶ 37.  Based on his assessment of Mr. Hollow Horn's condition, Dr. Segal gave the opinion that a 25-pound lifting restriction and the recommendation not to engage in repetitive bending, twisting, lifting, crawling or any high impact activity were appropriate. (Docket 1 ¶ 68).

FirstComp hired Thomas Karrow as its vocational consultant for Mr. Hollow Horn's DOL claim.  Id. ¶ 73.  When speaking with potential

employers, Mr. Karrow did not discuss the physical limitations imposed by Dr. Schleusener or Dr. Segal.  Id. ¶¶ 76 & 79.  Mr. Karrow identified one job available for Mr. Hollow Horn in his community—a bus driver position.  Id. ¶ 75.

On August 12, 2013, FirstComp offered to settle Mr. Hollow Horn's claim for $2,000.  Id. ¶ 113.  It made the same offer again on November 4, 2013.  Id.

On September 19, 2014, the DOL held a hearing on Mr. Hollow Horn's claim.  (Docket 1-1 at p. 1).  Prior to the hearing, Mr. Hollow Horn and FirstComp entered into a stipulation of facts which provided, among other things, that in 2008 Mr. Hollow Horn was injured in the course and scope of his employment, that Mr. Hollow Horn's 2008 work injury was compensable and that Dr. deGrange had determined Mr. Hollow Horn suffered an 8 percent whole person impairment resulting from the 2008 work injury, 50 percent of which was attributed to Mr. Hollow Horn's work injury.  Id. at pp. 1-2.

On September 15, 2015, the DOL entered its decision, finding in favor of Mr. Hollow Horn.  (Docket 1-1).  The DOL found Mr. Hollow Horn's May 2011 injury aggravated his 2008 injury, and his work was and remains a major contributing cause of Mr. Hollow Horn's disabilities and need for treatment under SDCL § 62-1-1(7)(b).  Id. at p. 10.  The DOL further found the May 2011 injury combines with the 2008 work-related, compensable injury, and the May 2011 injury contributed independently to Mr. Hollow

Horn's current condition and need for treatment under SDCL § 62-1-1(7)(c). Id. The DOL rejected Dr. Segal's causation opinion, barring it as a matter of law because it contradicted the parties' stipulation of facts.  Id. at p. 11. The DOL also rejected Mr. Karrow's opinion that employers were willing to accommodate Mr. Hollow Horn's condition, finding it baseless and insufficient as a matter of law because Mr. Karrow did not make potential employers aware of all of Mr. Hollow Horn's limitations, namely, that he was no longer able to drive a bus.  Id. at p. 11.  The DOL awarded Mr. Hollow Horn permanent total disability ("PTD") benefits from the time of his discharge on September 15, 2011, together with medical benefits for his back condition.  Id. at p. 12.

FirstComp appealed the DOL's decision to the Sixth Judicial Circuit Court, Hughes County, Pierre, South Dakota.  On June 15, 2016, the Circuit Court entered its decision ("Circuit Court decision") in the matter, affirming the DOL's finding that Mr. Hollow Horn suffered a compensable work-related injury to his back and was permanently and totally disabled. (Docket 1-2).  FirstComp did not appeal the order.

On August 4, 2016, FirstComp paid past due benefits and accrued interest to Mr. Hollow Horn of $139,720.82.  (Docket 1 ¶ 115).  From his future permanent total disability benefits Mr. Hollow Horn paid attorney fees, costs and taxes of $163,966.95.[3]  Id. ¶ 116.  Because these fees, costs and taxes

---

[3]An Administrative Law Judge authorized this payment pursuant to SDCL § 62-7-36, which permits a lump sum payment of attorney's fees at 30 percent of the disputed amount when a case is appealed to the circuit court, together with sales tax and costs.  See Dockets 10-1 & 10-8.

were actually paid through FirstComp, Mr. Hollow Horn's future weekly benefit rate was reduced from $442.99 to $284.48.  Id. ¶ 117.  FirstComp was ordered by the DOL to pay Mr. Hollow Horn $284.48, together with future cost-of-living adjustments, per month for the remainder of his life.  Id. ¶ 118.

## III.   ANALYSIS

The parties' cross-motions for summary judgment largely overlap.  Each requests summary judgment in their favor on the bad faith, barratry and abuse of process claims.  See Dockets 77 & 83.  FirstComp also seeks summary judgment on the issue of punitive damages.  See Docket 77.  Each party makes largely the same arguments in their briefing in support of their own motions as they make in their responsive briefing.  Accordingly, the court addresses each cause of action and the issue of punitive damages in turn, analyzing both parties' motions and arguments as to each alongside one another.

### A. BAD FAITH

"Because the relationship between a workers' compensation claimant and an insurer is adversarial and not contractual . . . an action alleging bad faith requires more than an allegation of wrongful conduct."  Mordhorst v. Dakota Truck Underwriters & Risk Administration Services, 886 N.W.2d 322, 324 (S.D. 2016) (internal quotation marks and brackets omitted).  Under South Dakota law, "an employee alleging a bad faith denial of workers' compensation benefits must satisfy the specific requirements of a two-part test:

(1) There was an absence of a reasonable basis for denial of policy benefits; and

12

(2) The insurer knew or recklessly disregarded the lack of a reasonable

basis for denial."

Johnson v. United Parcel Service, Inc., 946 N.W.2d 1, 9 (2020).

A reasonable basis for an insurer's denial of policy benefits exists where the insured's claim is "fairly debatable either in fact or law." Id. at 10 (quoting Dakota, Minnesota & E. R.R. Corp. v. Acuity, 771 N.W.2d 623, 630 (S.D. 2009)). The reasonableness of the insurer's decision "is determined based upon the facts and law available to the insurer at the time it made the decision to deny coverage." Dakota, Minnesota & E. R.R. Corp., 771 N.W.2d at 629 (brackets omitted). "[T]he relevant inquiry . . . is the insurer's decision and actions at the time it made the decision to deny coverage." Id. at 635 (internal quotation marks and citation omitted). "The appropriate inquiry for the . . . court in determining the relevance of [an insurer's post-denial litigation conduct] is whether [that conduct] sheds light on the reasonableness of the insurer's decision or conduct in denying insurance benefits." Id. "If the focus of a bad faith claim is the insurer's knowledge and belief during the time the claim is being reviewed[,] then the relevance of the litigation conduct is severely diminished." Id. at 635-36 (internal quotation marks, brackets and citation omitted).

FirstComp argues it is entitled to summary judgment on Mr. Hollow Horn's bad faith claim because Mr. Hollow Horn's entitlement to PTD benefits was fairly debatable as of September 30, 2011, when it issued its letter denying Mr. Hollow Horn further benefits, and therefore FirstComp had a reasonable

13

basis for the denial.  See Docket 78 at p. 6.  FirstComp asserts Mr. Hollow

Horn's entitlement to PTD benefits was fairly debatable for two reasons.  First,

FirstComp asserts, "based on the information regarding [Mr. Hollow Horn's]

condition known to FirstComp on September 30, 2011, [Mr. Hollow Horn] was

not entitled to such benefits under South Dakota's 'odd-lot doctrine.' "  Id. at

p. 10.  Under the odd-lot doctrine, an employee is "permanently totally disabled

if the employee's physical condition, in combination with the employee's age,

training, and experience and the type of work available in the employee's

community, cause the employee to be unable to secure anything more than

sporadic employment resulting in an insubstantial income."  SDCL § 62-4-53.

FirstComp argues Mr. Hollow Horn had not shown at the time of denial that he

was obviously unemployable, that he was in continuous, severe and

debilitating pain, or that he had conducted a good faith job search or would be

unable to benefit from vocational rehabilitation, all of which it asserts Mr.

Hollow Horn was required to show to receive PTD benefits under the odd-lot

doctrine.  (Docket 78 at pp. 11-14).

Second, FirstComp asserts Dr. Farnham's September 2011 opinion that

Mr. Hollow Horn's current low back condition was solely attributable to

degenerative and congenital factors made it fairly debatable whether his work-

related injuries were in fact causally connected to his condition as previously

determined, giving FirstComp a reasonable basis for the denial.  Id. at pp. 15-

26.  FirstComp argues its reliance on Dr. Farnham's opinion was proper even

in light of its "prior decision to pay [Mr. Hollow Horn's] benefits for his 2008

injury," because that decision was merely a "business decision to pay [PPD] benefits even though [FirstComp] questioned Dr. deGrange's opinion that [Mr. Hollow Horn's] work was a 50% cause of an 8% impairment rating" and therefore was "not [a] legally binding" compensability determination.  Id. at p. 16.  FirstComp insists it did not "admit[] to compensability by filing Form 111 with the DOL" after Mr. Hollow Horn's 2008 injury, and therefore "the DOL had *not* adjudicated the compensability" of that injury and "the parties had *not* reached a DOL-approved compromise agreement." Id. at p. 17.  Throughout its filings on the matter of summary judgment, FirstComp repeatedly bears down on its denial the Form 111 constituted or indicated any sort of agreement as to work-related activities having been the cause of Mr. Hollow Horn's 2008 back injury or an admission of FirstComp's liability.  See e.g, Docket 111 at pp. 15-18.

Mr. Hollow Horn argues he is entitled to summary judgment on his bad faith claim because statutory law mandated FirstComp pay Mr. Hollow Horn ongoing disability benefits making FirstComp's legal duty in this regard not fairly debatable, FirstComp breached its duty when it denied further benefits in September 2011, and FirstComp's breach was a knowing or reckless disregard of well-established statutory and case law governing the claim.  See Docket 85. Mr. Hollow Horn asserts the Form 111 filed with and accepted by the DOL after his 2008 injury constitutes approval of an enforceable agreement as to the

compensability of that injury under SDCL § 62-7-5[4] and clear past precedent. Id. pp. 14-22.  He further asserts FirstComp "accepted the compensability of [his] May 2011 injury[] as an aggravation of his 2008 workers' compensation claim," as evidenced by FirstComp's acknowledgement of Dr. Schleusener's determination to that effect, its payment of temporary total disability ("TTD") benefits through August 2011, and a letter and enclosures sent to the DOL in this regard.  Id. at p. 10.  Mr. Hollow Horn argues he was entitled to ongoing TTD benefits under SDCL § 62-4-5[5] when Porcupine Contract School did not make him a bona fide job offer at the beginning of the 2011-12 school year for a job he was capable of performing.  Id. at p. 11.  Mr. Hollow Horn rejects the notion he had to once again " 'prove' his entitlement before [FirstComp's]

---

[4]SDCL § 62-7-5 provides in pertinent part:

If the employer and employee reach an agreement in regard to the compensation under this title, a memorandum of the agreement shall be filed with the department by the employer or employee. Unless the department within twenty days notifies the employer and employee of its disapproval of the agreement . . . , the agreement shall stand as approved and is enforceable for all purposes . . . .

[5]SDCL § 62-4-5 provides in pertinent part:

If, after an injury has been sustained, the employee as a result thereof becomes partially incapacitated from pursuing the employee's usual and customary line of employment, or if the employee has been released by the employee's physician from temporary total disability and has not been given a rating to which § 62-4-6 [outlining additional compensation available for specific bodily injuries] would apply, the employee shall receive compensation . . . .  If the employee has not received a bona fide job offer that the employee is physically capable of performing, compensation shall be at the rate provided by § 62-4-3 [for temporary total disability benefits]. . . .

16

obligation accrued," arguing FirstComp had "an affirmative duty" that "did not require [additional proof or] an order before due." (Docket 101 at pp. 12-13). He further argues FirstComp's September 30, 2011, denial based on Dr. Farnham's records review "directly contradicts" FirstComp's acceptance of Dr. Schleusener's determination that the 2011 injury aggravated the 2008 injury through its payment from May through August 2011 of TTD benefits. (Docket 85 at p. 20). Mr. Hollow Horn insists FirstComp was required to show a change in his condition pursuant to SDCL § 62-7-33[6] in order for its September 30, 2011, denial of benefits to have been proper, which FirstComp did not do. Id. at p. 19.

Instead, in Mr. Hollow Horn's view, FirstComp "sought to avoid liability to provide ongoing wage replacement benefits, through reliance on [Dr. Farnham's] medical opinion that rejected the known facts and proofs previously accepted by [FirstComp]." (Docket 101 at p. 9). Mr. Hollow Horn submits FirstComp's legal obligation to provide him ongoing benefits was well-established in the statutory and case law and therefore it was not fairly debatable. He submits FirstComp knew its "reliance on Dr. Farnham was not legitimate" because Dr. Farnham's opinion "contradicted the facts that were already known and established." Id. at p. 14. Mr. Hollow Horn submits this evidence that FirstComp's legal obligation was not fairly debatable and Dr.

---

[6]SDCL § 62-7-33 permits "[a]ny payment, including . . . disability payments . . . [to] be reviewed by the Department of Labor . . . at the written request of the employer or of the employee[,] and on such review payments may be ended, diminished, increased, or awarded . . . if the department finds that a change in the condition of the employee warrants such action."

Farnham's opinion was not a legitimate basis for skirting that obligation supports the conclusion FirstComp knew "its denial was without merit, but avoided oversight by the relevant authorities" and proceeded with the denial anyway, unilaterally and in bad faith.  Id.

The court addressed a similar worker's compensation claimant's allegation of bad faith based on a denial of benefits.  See Hayes v. Acuity, CIV. 17-5015, 2020 WL 1322269 (D.S.D. Mar. 20, 2020); see also Wetch v. Crum & Foster Commercial Ins., CIV. 17-5033, 2020 WL 898357 (D.S.D. Feb. 25, 2020).  In Hayes, the court recounted the longstanding law in South Dakota providing the procedure available to an employer or insurer that wishes to challenge payment of benefits when the employee previously established the compensability of their injury.[7]  The South Dakota Supreme Court also recently addressed a similar bad faith claim.  See Johnson v. United Parcel Service,

---

[7]SDCL § 62-1-1(7) provides: "An injury is compensable only if it is established by medical evidence, subject to the following conditions:

(a) No injury is compensable unless the employment or employment related activities are a major contributing cause of the condition complained of; or

(b) If the injury combines with a preexisting disease or condition to cause or prolong disability, impairment, or need for treatment, the condition complained of is compensable if the employment or employment related injury is and remains a major contributing cause of the disability, impairment or need for treatment;

(c) If the injury combines with a preexisting work related compensable injury, disability, or impairment, the subsequent injury is compensable if the subsequent employment or subsequent employment related activities contributed independently to the disability, impairment, or need for treatment."

Inc., 946 N.W.2d 1 (S.D. 2020).  It, too, recounted much of the same longstanding law, analyzing and applying it in a manner consistent with Hayes.  See id. pp. *9-14.

In 1990, the South Dakota Supreme Court held "[b]y virtue of SDCL 62-7-33, [the DOL] has continuing jurisdiction to adjust any payment from the original injury based upon a change of condition occurring since the last award."  Whitney v. AGSCO Dakota, 453 N.W.2d 847, 850 (S.D. 1990).  "An agreed stipulation entered into between employer and employee, which is filed and approved by Department, may have the effect of a final determination."  Id.

In 1993, the South Dakota Supreme Court applied retroactivity analysis in determining "[t]he holding in Whitney was decided on well settled law of this state that worker's compensation awards, whether by agreement of the parties or following an adjudication, are res judicata as to all matters considered unless the department has reserved continuing jurisdiction over one or more questions."  Larsen v. Sioux Falls School District No. 49-5, 509 N.W.2d 703, 706 (S.D. 1993).  The Larsen court stated "[a] statutory exception to the finality rule is found in SDCL 62-7-33 which gives the Department continuing jurisdiction to adjust payments when there is a physical change in the employee's condition from that of the last award."  Id. at 707 (referencing Whitney, 453 N.W.2d at 850-52; other references omitted).

Larsen concerned the finality of an award by agreement of the parties.  Id. at 707-08.  In fact, at issue in Larsen was an earlier version of the DOL's Form 111, and the Larsen court noted it was "at a loss to explain [the DOL's]

19

former practice" of treating parties' agreements—memorialized in a Form 111 filed with the DOL and deemed approved if the DOL does not issue a disapproval within twenty days of the filing—as non-final awards, given the court's prior decisions.  Id.; see also Call v. Benevolent and Protective Order of Elks, 307 N.W.2d 138, 140 (S.D. 1981) (advising reservations of continuing jurisdiction in documents like Form 111 "should be used cautiously and only in exceptional cases" by the DOL to retain jurisdiction over "one or more specific questions or issues," but should not be used as "a secondary means of reviewing an otherwise final order").

In 2009, the DOL interpreted language in a newer version of Form 111—the same version used by FirstComp in Mr. Hollow Horn's case.  Ferrazzano v. Rushmore Forest Products, Inc., HF No. 81, 2007/08, 2009 WL 1149141 (S.D. Dept. Lab. Apr. 17, 2009).  The form states: "The [DOL] retains jurisdiction as to all issues.  The employee does not waive his/her right to pursue any benefits to which s/he may be entitled."  Id. at *6.  The DOL interpreted this language as reserving for Mr. Ferrazzano "the right to pursue *other* potential claims" unresolved in the agreement underlying the Form 111, and as reserving for the DOL "jurisdiction over any *future* issues."  Id. (emphasis added).  The DOL distinguished this from the Form 111 at issue in Larsen, which did not include language reserving Mr. Larsen's right to pursue other potential claims arising out of the same circumstances.  See id.  Ferrazzano affirms the finality of an agreement, including any issues and award settled upon therein, underlying a Form 111 filed with and approved by the DOL.

20

It has been clear at least since <u>Whitney</u> in 1990 and reaffirmed in numerous cases since that SDCL § 62-7-33 provides the exclusive pathway by which an employer or insurer can seek the termination or modification of benefits.   For example, in 2011, the South Dakota Supreme Court held that "[w]hen [an employee] incurs medical expenses in the future, [an e]mployer may reimburse [him] or challenge the expenses as not necessary or suitable and proper under SDCL 62-7-33." <u>Stuckey v. Sturgis Pizza Ranch</u>, 793 N.W.2d 378, 389 (S.D. 2011).

In 2014, the South Dakota Supreme Court rejected an employer's effort to unilaterally deny an employee ongoing workers' compensation benefits based on a doctor's opinion derived from an employer-ordered IME.  <u>See</u> <u>Hayes v. Rosenbaum Signs & Outdoor Advertising, Inc.</u>, 853 N.W.2d 878 (S.D. 2014).  In so doing, it stated: "When SDCL 62-1-1(7) is read not in isolation but as a whole in light of other enactments, specifically SDCL 62-7-33, the statute's intent is not to place a continuous burden on a claimant once he . . . proves a compensable injury.  Instead, once claimant proves a compensable injury, SDCL 62-7-33 provides the method for a party to assert a change in condition." <u>Id.</u> at 886.  "[I]f a claimant proves a compensable condition under SDCL 62-1-1(7) and the employer subsequently feels claimant's condition no longer '*remains* a major contributing cause of the disability, impairment, or need for treatment [,]' . . . the employer may assert a change-of-condition challenge under SDCL 62-7-33 where it bears the burden of proof." <u>Id.</u> (citing SDCL § 62-1-1(7)(b); emphasis in original).

21

Most recently in 2020, the South Dakota Supreme Court rejected the notion its <u>Stuckey</u> and 2014 <u>Hayes</u> decisions announced any new or changed law. <u>See</u> <u>Johnson</u>, 946 N.W.2d at *13. The <u>Johnson</u> court acknowledged "[i]t may well be that the prevailing currents of workers' compensation practice had, temporarily, discounted our precedent and the text of SDCL 62-7-33 by viewing the use of an IME as a means of terminating an employee's benefits. But that does not make the practice right, or reasonable, or render the underlying legal premise fairly debatable." <u>Id.</u>

The same rationale applies in this case as in the court's <u>Hayes</u> decision and the South Dakota Supreme Court's <u>Johnson</u> decision. At the time of its denial of additional benefits to Mr. Hollow Horn on September 30, 2011, FirstComp's "legal duty was not fairly debatable. A statute [SDCL § 62-7-33] clearly controlled." <u>Hayes</u>, 2020 WL 1322269 at *9 (quoting <u>Bertelsen v. Allstate Ins. Co.</u>, 833 N.W.2d 545, 563 (S.D. 2013) (*abrogated on other grounds by* <u>Magner v. Brinkman</u>, 883 N.W.2d 74 (S.D. 2016))). The compensability of Mr. Hollow Horn's 2008 back injury was established when FirstComp accepted Dr. deGrange's causality determination by paying Mr. Hollow Horn PPD benefits associated with that injury and filed the Form 2011 with the DOL memorializing the payment, which the DOL approved. Compensability of Mr. Hollow Horn's 2011 back injury was established when FirstComp accepted Dr. Schleusener's determination the 2011 injury was an aggravation of the 2008 injury by paying Mr. Hollow Horn TTD benefits for that injury and submitted a letter and enclosures memorializing that payment to the DOL.

22

In order to subsequently terminate or modify benefits owed to Mr. Hollow Horn, FirstComp was required to make a request to the DOL and show a change in Mr. Hollow Horn's condition pursuant to SDCL § 62-7-33.  Given the plain meaning of the statute's text and well-established case law interpreting it, FirstComp's legal obligation in this regard was not fairly debatable.  There are no facts, if taken in the light most favorable to FirstComp, that even suggest FirstComp made or attempted to make such a request.  Therefore, when the facts are considered in the light most favorable to FirstComp, FirstComp's September 30, 2011, denial of further benefits premised primarily on Dr. Farnham's September 2011 records review lacked a reasonable basis.  The court finds there is no genuine issue of material fact in this regard and as a matter of law the first element of the bad faith test is met.

The question of FirstComp's actual intent—whether FirstComp knew or recklessly disregarded the lack of a reasonable basis for its denial—is a factual matter which must be resolved by the jury should the defendant claim the breach of its duty to Mr. Hollow Horn "occurred for reasons other than fairly misunderstanding its legal obligation under the statute." Bertelsen, 833 N.W.2d at 563.  When the facts alleged are viewed in the light most favorable to each party, inferences can be drawn from those facts, which, if accepted by the jury, could support a finding on the second element for the respective party.  However, as the court observed last year in Hayes and the South Dakota Supreme Court observed even more recently in Johnson, when an "insurer made no effort to learn or clarify the extent of its clear statutory obligation to

23

pay benefits and could have contacted legal counsel to ascertain the controlling law[,] . . . knowledge of the duty to pay the insured's claim [is] directly imputed to the insurer which [is], therefore, prohibited from arguing that it reasonably believed it had no statutory duty" to continue paying benefits.  <u>Johnson</u>, 946 N.W.2d at *14 (internal quotations and citations omitted).

Defendant's motion for summary judgment is denied and plaintiff's motion for summary judgment is granted in part and denied in part, with the issue of FirstComp's actual intent reserved for the jury.

### B. BARRATRY

Both parties sought summary judgment on the barratry claim.  <u>See</u> Dockets 78 at pp. 26-29 & 85 at pp. 29-31.  Subsequently, in his response to FirstComp's motion for summary judgment, Mr. Hollow Horn "[i]n the interest of judicial economy and resources . . . withdr[ew] the claim for barratry in this action, as the abuse of process claim concerns similar issue, without the requirement of the Court's analysis of legislative history, etc." (Docket 101 at pp. 26-27; <u>see</u> <u>also</u> Docket 110 at p. 17 (same)).  Mr. Hollow Horn has not followed any formal procedure for withdrawal of his barratry claim.  Given Mr. Hollow Horn's representation to the court that he does not intend to pursue the barratry claim, the court considers the parties' motions for summary judgment on the matter moot but will require Mr. Hollow Horn to file a motion for leave to file an amended complaint in order to formally withdraw the claim.  <u>See</u> Fed. R. Civ. P. 15(a)(2) ("[A] party may amend its pleading only with the opposing

party's written consent or the court's leave.  The court should freely give leave

when justice so requires.").

### C. ABUSE OF PROCESS

"Abuse of process consists of the malicious misuse or misapplication of

legal process after its issuance to accomplish some collateral purpose not

warranted or properly attainable thereby." Layton v. Chase, 144 N.W.2d 561,

563 (S.D. 1966).  "It is not an action for maliciously causing legal process to be

issued." Id.  An abuse of process claim requires proof of:

(1)    The existence of an ulterior purpose, and
(2)    A willful act in the use of the process not proper in the regular
       prosecution of the proceeding.

Id.

South Dakota has adopted the Restatement (Second) of Torts § 682.

Miessner v. All Dakota Ins. Associates, Inc., 515 N.W.2d 198, 204 (S.D. 1994).

Section 682 states: "One who uses a legal process, whether criminal or civil,

against another *primarily* to accomplish a purpose for which it is not designed,

is subject to liability to the other for harm caused by the abuse of process."

Restatement (Second) of Torts § 682 (1977) (emphasis added).  A comment to

that section clarifies "there is no action for abuse of process when the process

is used for the purpose for which it is intended, but there is an *incidental*

motive of spite or an ulterior purpose of benefit to the defendant." Id., cmnt. b

(emphasis added).  For example, abuse of process may involve, among other

things, "some form of extortion, using the process to put pressure upon the

other to compel him to pay a different debt or to take some other action or

refrain from it." Id.

25

In support of his abuse of process claim, Mr. Hollow Horn alleges:

> FirstComp forced prolonged proceedings before the DOL for an
> ulterior purpose – to effectuate a low ball settlement and to pressure
> Plaintiff into accepting the same.  Defendant engaged in baseless
> factual argument designed to overwhelm Plaintiff. . . .  [T]his was
> clearly a campaign by Defendant to bury Plaintiff in litigation.
> Defendant acknowledged that these positions and arguments were
> barred, yet continued to rely on faulty theories.  FirstComp offered
> medical and vocational opinions, which contradicted *each other*.
> . . . Admissions of fact, follow[ed] by contradiction of those same
> facts is an 'act in the use of process which is improper in the regular
> prosecution of the proceeding.'  Moreover, Defendant paid the full
> value of Plaintiff's claim under SDCL 58-12-3, which alleged
> vexatious and unreasonable action.  This payment, to moot the need
> for a hearing and resolution, objectively indicates that Defendant
> understood it had intentionally engaged in wrongful action.

(Docket 85 at p. 32).

FirstComp makes essentially the same arguments in its response to Mr.
Hollow Horn's motion for summary judgment as it does in its memorandum in
support of its own motion.  See Dockets 95 at pp. 33-36 & 78 at pp. 29-35.
First, FirstComp argues Mr. Hollow Horn's abuse of process claim, to the
extent it is based on FirstComp's actions during or related to the DOL
proceedings, fails as a matter of law because abuse of process claims under
South Dakota law "can be based only on the use of judicial process, not
administrative proceedings."  (Docket 78 at p. 29).  Second, FirstComp argues
the claim, to the extent it is based on FirstComp's actions during or related to
its appeal to the Sixth Judicial Circuit Court, fails as a matter of law because
an appeal is not the type of "process" contemplated by the tort and, even if it
were, a party may exercise its right to an appeal even if the appeal lacks merit
or the party has an ulterior purpose such as causing delay to strong-arm a

settlement.  See id. at pp. 31-35.  FirstComp argues the only type of process which can form the basis of an abuse of process claim is that defined in SDCL § 22-1-2(34).  Id. at p. 31.  That section defines process as "any writ, warrant, summons, or order issued in the course of judicial proceedings."  SDCL § 22-1-2(34).

Mr. Hollow Horn argues South Dakota law recognizes a common law claim for abuse of process, which should apply equally to administrative proceedings as it does judicial proceedings, and clarifies his claim concerns FirstComp's actions during the litigation of the underlying case, including the proceedings in front of both the DOL and Sixth Judicial Circuit Court.  See Docket 101 at pp. 27-29.

Many courts in various jurisdictions, some of which have also adopted § 682, take the view an abuse of process claim, as FirstComp urges, is only available in cases involving the use of judicial proceedings, not administrative ones.  See, e.g., Hardisty v. Moore, 6 F. Supp. 3d 1044 (S.D. Cal. 2014); Johnstown Feed & Seed, Inc. v. Continental Western Ins. Co., 641 F. Supp. 2d 1167 (D. Colo. 2009); Rebarcak v. Cincinnati Ins. Co., No. 4:15-cv-472, 2016 WL 11606684 (S.D. Iowa June 28, 2016); Land Baron Inv. v. Bonnie Springs Family LP, 356 P.3d 511 (Nev. 2016); Bloom v. Arnold, 248 P.3d 752 (Kan. App. 2011).  A recent order out of the Seventh Judicial Circuit Court, Pennington County, Rapid City, South Dakota, appears to endorse this view.  See Johnson v. United Parcel Service, Inc., 51CIV14-000655 (Apr. 25, 2017) (granting defendants' motion for judgment on the pleadings with regard to an abuse of

process claim after defendants made the same arguments as FirstComp has here that the claim is not available in cases involving administrative rather than judicial proceedings and must involve legal process as defined in South Dakota statutory law).  Mr. Hollow Horn's abuse of process claim is based on his accusation FirstComp improperly prolonged the DOL litigation in order to force him to accept a low-ball settlement.  This allegation revolves around the use of an administrative, rather than judicial, process.  To the extent Mr. Hollow Horn's allegations extend to FirstComp's behavior before the Sixth Judicial Circuit Court on appeal, and even if that could moot the distinction between administrative versus judicial process, Mr. Hollow Horn's allegations involve the propriety of FirstComp's actions or inactions in its own filings, not the propriety of the use of some type of process as defined under South Dakota statute after it issued.  Accordingly, FirstComp's motion for summary judgment as to abuse of process is granted.  Mr. Hollow Horn's motion for summary judgment as to abuse of process is denied.

### D. PUNITIVE DAMAGES

South Dakota does not recognize an "independent cause of action for punitive damages . . . .  Punitive damages are not available unless a tort has been committed," in which case they may be awarded in addition to compensatory damages.  O'Neill v. O'Neill, 876 N.W.2d 486, 496 (S.D. 2016) (citing Berry v. Time Ins. Co., 798 F. Supp. 2d 1015, 1022 (D.S.D. 2011) (citing Schaffer v. Edward. D. Jones & Co., 521 N.W.2d 921, 928 (S.D. 1994))).  As the court previously noted, Mr. Hollow Horn's claim for punitive damages cannot

proceed as a separate cause of action, but it may be considered as a separate category of damages in his prayer for relief.  <u>See</u> Docket 35 at p. 19.

Punitive damages are available "[i]n any action for the breach of an obligation not arising from contract, where the defendant has been guilty of oppression, fraud, or malice, actual or presumed."  SDCL § 21-3-2.  "An insurer's clear breach of contract or denial of a claim that is not fairly debatable may indicate malice."  <u>Bertelsen v. Allstate Ins. Co.</u>, 796 N.W.2d 685, 699 (S.D. 2011) (citations omitted); <u>see also</u> <u>Haney v. American Family Mutual Ins. Co.</u>, 223 F. Supp. 3d 921, 928 (D.S.D. 2017).  "Actual malice is a positive state of mind, evidenced by a positive desire and intention to injure one another, actuated by hatred or ill will towards that person.  Presumed malice may not . . . be motivated by hatred or ill will, but is present when a person acts willfully or wantonly to the injury of others."  <u>Case v. Murdock</u>, 488 N.W.2d 885, 891 (S.D. 1992).

FirstComp seeks summary judgment on punitive damages, believing Mr. Hollow Horn "cannot recover on any of his three causes of action."  (Docket 78 at p. 35).  As the court found above, a genuine issue exists as to whether FirstComp knew or recklessly disregarded the lack of a reasonable basis for its September 30, 2011, denial, and a jury could find FirstComp guilty of bad faith if it decides this issue in favor of Mr. Hollow Horn.  Many of the same facts which, if taken in the light most favorable to Mr. Hollow Horn, could support a finding FirstComp knew or recklessly disregarded the lack of reasonable basis for its denial and also support a finding FirstComp acted with malice in issuing

the denial.  Therefore, whether punitive damages are available in this case depends on whether FirstComp is found guilty of bad faith and, if so, punitive damages are an issue for the jury.  Accordingly, FirstComp's motion for summary judgment as to punitive damages is denied.

**ORDER**

Based on the above analysis, it is

ORDERED that defendant's motion for summary judgment (Docket 77) is granted in part and denied in part consistent with this order.

IT IS FURTHER ORDERED that plaintiff's motion for summary judgment (Docket 83) is granted in part and denied in part consistent with this order.

IT IS FURTHER ORDERED that plaintiff shall file a motion for leave to amend his complaint pursuant to Fed. R. Civ. P. 15(a)(2) within 7 days of the filing of this order.

Dated May 12, 2021.

BY THE COURT:

/s/ *Jeffrey L. Viken*

JEFFREY L. VIKEN
UNITED STATES DISTRICT JUDGE

30